586 P.2d 270

**Robert M. FORD and Alice C. Ford, husband and wife, Plaintiffs, Counter-defendants, and Appellants,**

v.

**Richard LORD and Carolyn E. Lord, husband and wife, Defendants, Counterclaimants, and Respondents.**

**No. 12095.**

Supreme Court of Idaho.

Nov. 8, 1978.

E. R. Frachiseur of Wilson & Frachiseur, Mountain Home, for plaintiffs, counter-defendants, and appellants.

Karl Jeppesen of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants, counter-claimants, and respondents.

BISTLINE, Justice.

This appeal challenges the trial court's final judgment decreeing the specific performance of an option for the purchase of a ranch. The option was encompassed within the provisions of a 5-year lease, the validity of which is not in question. The option extended during the term of the lease and required the exercise of the option to be "by notifying the Owner in writing at least ninety days before the end of the term." The option called for a purchase price of $50,000.00.

The owners of the property were plaintiffs-appellants Robert M. Ford and Alice C. Ford. The optionees-lessees are the defendants-respondents Richard Lord and Carolyn E. Lord. Mrs. Lord is the daughter of plaintiffs-appellants Ford. Although the lease term commenced as of January 1, 1972, it was executed and acknowledged on January 31, 1972. Possession was given as of January 1. Consideration for the leasehold was stated in the lease as follows:

1. CONSIDERATION. The Owner is presently occupying the above described premises as a Ranch-Farm Operation. In consideration of Owner leasing the above described property, Lessee agrees in lieu of cash rent to water, feed, pasture, rear and otherwise care and maintain as long as this lease is in effect, as Owner shall instruct, fifty head of cows and two

range bulls for the Owner. During the year 1972 Owner will pay for all hay and pasture fed to Owner's cattle. For each and every year after 1972 Owner and Lessee will negotiate at the beginning of each year as to which party will be liable for the cost of hay and pasture for the ensuing year to be fed to Owner's cattle.

Legal action was commenced by owners in February, 1975, seeking termination of the lease on allegations of lessees' uncured default in failing to perform various conditions and covenants of the lease. There was also a claim for damages and attorney's fees, the latter sought pursuant to a lease provision.

In answering the complaint, the lessees denied having violated the lease, and with regard to an owners' allegation that lessees had not cared for 50 head of cattle, alleged that owners had unilaterally determined to remove the same from the leasehold. Lessees, by counterclaim, sought specific performance, alleging that lessees had exercised their option in May, 1973, and that lessees at that time, and since, were ready, willing and able to pay the $50,000.00 purchase price upon owners' tender of a warranty deed, which lessees alleged owners refused to do. Lessees also sought attorney fees.

Owners defended against the counterclaim for specific performance on allegations that (1) lessees had revoked their exercise of the option; (2) the lessees at no time tendered the purchase price or any part thereof; and (3) failure of consideration for the option, in that the lessees had failed to perform their covenants and agreements set forth in the lease which contained the option.

A trial was had in July of 1975, following which the trial court prepared and filed a memorandum decision, stating as to the issues of lessees' default and their exercise of option:

The lessee performed the obligations of the lease other than the replacement of the dam and the bridge, and there was no objection from the lessors until June of 1974.

In May of 1973 the lessees exercised their option to purchase by written notice to the lessors by which lessors were advised that payment would be made in cash at the time the lessors delivered the deed and bill of sale together with title insurance policy in standard form, further advised them that if lessors preferred a time purchase that that could be negotiated.

Lessees thereafter sought information from lessors as to when the matter could be closed and what their intentions were but lessors neglected to give them any answer for a period of several months and then in early 1974 advised them that they did not intend to honor the option to purchase. In June of 1974 the lessor took his cattle from the BLM range land and put them in his own pasture instead of permitting the lessees to take the cattle and pasture them in pasture that lessee had arranged for, and the lessor then served notice of default and intention to forfeit. Thereafter on the 7th day of October, 1974, lessors had an attorney prepare a notice of default and intention to forfeit which was served on lessees.

. . . . .

The notice of exercise of option was in writing and was served in May of 1973, during the term of the lease. By the exercise of the option the lease was terminated and there existed a contract to purchase between the parties. The lessees have at all times since the exercise of option been ready, willing and able to pay to the lessors the sum of $50,000.00, the purchase price as agreed. The obligation to make payment was dependent upon the simultaneous delivery to them of the warranty deed requested, the title insurance policy in standard form and the bill of sale. The lessors have never tendered these documents and have in fact refused to provide them to the lessees.

The lessors have made no attempt to exercise any right of forfeiture or take any action on the alleged defaults on the part of the lessees for more than a year after the exercise of the option to pur-

chase, and by reason of the option to purchase have lost their right to complain by reason of any alleged defaults on the part of the lessees.

The lessees are entitled to specific performance of the option to purchase and have the lessors deposit with the Clerk of Court a warranty deed, a title report in proper form and a proper bill of sale. Lessees should deposit with the Clerk of the Court the sum of $50,000.00 and the clerk should be authorized and ordered to deliver the warranty deed, bill of sale and title of insurance policy to the lessees and the $50,000.00 to the lessors.

Findings of fact and conclusions of law were prepared and signed in accordance with the memorandum decision.

The trial court's findings are not challenged, other than by an assignment of error which contends that the evidence established owners' defense that lessees' repudiated their exercise of option, which we find is without merit.

Owners contend (I) that the trial court erred in granting specific performance because the option was too indefinite, uncertain and incomplete, the option obligations were not mutually enforceable, and lessees' failed to tender the option purchase price; and (II) that the option could not be exercised while lessees were in default on their lease covenants and obligations.

I

■ Owners' first argument relies on the case of *Luke v. Conrad,* 96 Idaho 221, 526 P.2d 181 (1974), for the proposition that a contract will not be specifically enforced if its terms are too indefinite, uncertain or incomplete to ascertain. In particular, various passages are quoted indicating that a contract is fatally defective when it fails to spell out financing terms. In this case, the only uncertainty regarding financing arrangements arose when the lessees offered to pay the $50,000.00 in cash or to make whatever other financial arrangement that would prove most beneficial to the owners for tax purposes. The doctrine of *Luke v. Conrad* has no application under such facts.

*See also Matheson v. Harris,* 98 Idaho 758, 572 P.2d 861 (1977).

■ Owners contend that the trial court should not have granted specific performance because the option to purchase was lacking in mutuality of obligation. However, the very nature of an option contract is the grant of a right without any obligation.

Options constitute an important class of unilateral contracts which form an exception in certain respects to the general rule as to the necessity of mutuality as a requisite for equity to decree specific performance. The absence of obligation on the part of the holder of the option to accept the offer and convert the option into a binding contract does not constitute such a lack of mutuality as will prevent specific performance after acceptance, particularly where the option itself is founded on sufficient and valuable consideration or is under seal and therefore imports a consideration. Any objection to specific performance on the ground of want of mutuality is removed by the election to accept and exercise the option.

71 Am.Jur.2d *Specific Performance* § 144 (1973).

■ Owners also predicate their "lack of mutuality" argument on the fact that the document notifying them of lessees' exercise of option was not signed, and hence not enforceable by owners against lessees. They also contend that the document, not being signed, hence was not "subscribed" as required by the Statute of Frauds, I.C. § 9–503. Both of these arguments are raised for the first time on appeal. Failure to sign the Notice of Intention to Exercise Option, or to "subscribe" it, was not raised as an issue in the pleadings, and it was never submitted to the trial court, either as an issue submitted by the express or implied consent of the parties. Moreover, we note that the lease required only that the notice be in writing, which it was, and that it was personally delivered. It was offered and admitted at the trial without any objec-

tion thereto. Parties are held on appeal to the legal theories upon which the case was tried. Lack of signing and lack of subscription were not urged as defenses at the trial, were not urged on owners' motion for summary judgment, and following owners' change of counsel after trial, were not urged in post-judgment motions. Such will not be considered here for the first time.

It is the established rule in this jurisdiction that issues not raised in the trial court cannot be presented to this Court on appeal, and the parties will be held to the theory upon which the cause was tried in the lower court.

*Robinson v. Spicer,* 86 Idaho 138, 145, 383 P.2d 844, 848 (1963) (citations omitted). *Dunn v. Baugh,* 95 Idaho 236, 506 P.2d 463 (1973); *Miller v. Martin,* 93 Idaho 924, 478 P.2d 874 (1970); *Frasier v. Carter,* 92 Idaho 79, 437 P.2d 32 (1968); *Williams v. Havens,* 92 Idaho 439, 444 P.2d 132 (1968).

■ Owners contend that the exercise of the option to purchase was invalid because of a failure to tender the purchase price. This argument fails to recognize the distinction between those option contracts which make tender of the purchase price "a condition precedent to the exercise of the option," and those "in which such tender is performance of the contract arising from the act of acceptance." *Killam v. Tenney,* 229 Or. 134, 366 P.2d 739, 747–48 (1961). In the present case, the tender of the purchase price was not made a condition precedent to exercise of the option. The lease stated only that "[t]he Lessees shall have and they are hereby granted the right, privilege and option to purchase the said premises and farm equipment during the term of this lease, for the sum of $50,000.00."

Furthermore, the trial court found that The lessees have at all times since the exercise of option been ready, willing and able to pay to the lessors the sum of $50,000.00, the purchase price as agreed. The obligation to make payment was dependent upon the simultaneous delivery to them of the warranty deed requested, the title insurance policy in standard form and the bill of sale. The lessors

have never tendered these documents and have in fact refused to provide them to the lessees.

Indeed, at all times pertinent, owners were consistently denying that lessees had any right to exercise the option to purchase. Under such circumstances, it has been held:

It was not necessary that respondents [the option holders] tender the purchase price to the appellants or deposit the same into the registry of the court, when the appellants denied the existence of a contract. The law will not require one to perform a useless act.

*Duprey v. Donahoe,* 52 Wash.2d 129, 323 P.2d 903, 906 (1958).

## II

■ We turn next to the owners' contention that compliance with the terms of the lease constituted the sole consideration for the lease and the option encompassed therein, and that lessees' defaults nullified any right to exercise the option. Other than owners' contention that failure to rebuild a dam which washed out in 1972, all other claims of lessees' default occurred *after* the option was exercised. Lessees, upon a valid exercise of the option, in effect nullified any claim of owners as to lease defaults which occurred thereafter. The trial court specifically met this issue, saying in his memorandum decision that "[b]y the exercise of the option the lease was terminated . . . ." A conclusion of law to the same effect in accordance with that statement was duly entered. We agree with the trial court. Alleged violations of the lease agreement occurring after the exercise of the option were moot. *See* 17 Am.Jur.2d *Contracts* § 60 (1964).

■ The trial court decided the alleged dam washout issue of 1972 against the owners, stating in his memorandum decision:

The lease was not executed until January 31st, 1972. During that period of time there was exceptionally heavy rainfall and flooding and the dam on the premises was washed out together with a bridge and there was some erosion of the premises.

The lessee made inquiry about fixing the dam and was advised by the Bureau of Reclamation that he could not rebuild the dam as it had been but would have to rebuild it according to their specifications. The lessee after review of the matter determined that it was not financially feasible to replace the dam or to rebuild it according to their specifications in view of the fact that the dam was merely used for regulating irrigation water which was only useable during the forepart of the summer and was intermittent. He, in agreement, with the lessor tried to find a railroad flat car for the construction of a bridge to replace the one that was washed out. The bridge was only needed during times of flooding which only occurred three or four times a year.

The lessee performed the obligations of the lease other than the replacement of the dam and the bridge, and there was no objection from the lessors until June of 1974.

A finding in accordance with that statement was entered, with the court concluding as a matter of law that not rebuilding the dam was not a default of the lease provisions. We agree with the trial court. Nothing in owners' evidence or argument persuades us that the trial court was in error.

Finally, we find nothing in our review of the record to sustain owners' other pleaded defense and assignment of error—laches. Owners charge lessees with laches in not having sued for specific performance until more than a full year after their exercise of the option. The owners do not pretend to show any change of position or prejudice occasioned by the so-called delay, and we see no merit whatever in this assignment.

The judgment is affirmed. Costs to respondents.

SHEPARD, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.