682 P.2d 1289

**ACE REALTY, INC., an Idaho corporation, Plaintiff/Appellant/Cross-Respondent,**

v.

**Alfred ANDERSON and Sadie Anderson, husband and wife, Defendants/Respondents/Cross-Appellants,**

**Alfred ANDERSON and Sadie Anderson, husband and wife, Counterclaimants/Cross-Appellants,**

v.

**ACE REALTY, INC., an Idaho corporation, Counterdefendant/Cross-Respondents,**

**and**

**Nolan Victor and Ruby Victor, husband and wife, Additional Defendants on Counterclaim/Cross-Respondents.**

No. 14567.

Court of Appeals of Idaho.

May 18, 1984.

Jeff Stoker, Twin Falls, for Ace Realty, Inc.

Gordon Thatcher, Rexburg, for the Andersons.

WALTERS, Chief Judge.

Nolan and Ruby Victor entered into an agreement with Alfred and Sadie Anderson providing for the sale of a one-half interest in a 640 acre farm to the Andersons. The agreement provided that the Andersons were to operate the farm, take three-fourths of the crop proceeds and half of the proceeds of cattle sales for themselves, and pay the Victors the remainder. The Victors subsequently transferred their interest to Ace Realty, Inc., a corporation which they had formed. Later, Ace Realty sued Alfred and Sadie Anderson, requesting an accounting of farm income, expenses and operation, requesting a judgment for the balance due on notes which the Andersons had not paid, and asking that the land sale contract, on which the Andersons had failed to make payments, be terminated. The Andersons paid all past-due payments on the contract and counterclaimed against Ace Realty and the Victors—the sole owners of Ace Realty—for amounts which they claimed the Victors owed them. Each recovered on some of his claims. The Victors, through Ace, appealed. The Andersons cross-appealed.

The Victors raise numerous issues on appeal. Their contentions may be summarized as follows. The Victors argue that they are entitled to an additional award of damages, based on undisputed evidence presented at trial. They contend that the trial court should not have permitted testimony concerning the amount of hay fed to

cattle from 1969 to 1973. The Victors state that the Andersons were precluded by the contract from having separately-owned cattle on the farm and that the proceeds of all cattle were to be shared equally. They assert that the term "cattle," as used in their contract with the Andersons, should be interpreted to include swine and sheep, and that the court should award them half of the proceeds of sales of the Andersons' swine and sheep. The Victors urge that a comment which the judge made during trial shows that he did not have a sufficient understanding of the proceedings to render a fair and impartial decision. They also argue that the contract principle "expressio unius est exclusio alterius" should be applied here. Finally, they contend that the court should have awarded them attorney fees at trial and they request an award of attorney fees for this appeal. We find no error and affirm the trial court as to the Victors' appeal. We do not award attorney fees to the Victors on their appeal.

The Andersons cross-appeal, claiming that the trial court should have awarded them interest on the amount found due on their counterclaim for hay harvest expenses from the date those expenses were due. In the alternative, the Andersons contend that the court should have deducted the amount awarded to them from the amount awarded the Victors before computing interest on the Victors' award. Also, the Andersons argue that they should have been awarded attorney fees at a posttrial hearing. They also request an award of attorney fees on this appeal. We reverse the denial of prejudgment interest and the method of computing interest on the Victors' award and remand to recompute the judgment. We also remand for a reconsideration of the Andersons' request for attorney fees incurred at the post-trial hearing. We do not award attorney fees to the Andersons on this appeal.

## I. Facts

The contract of sale provided that no down payment would be made and the Andersons would pay the $100,000 purchase price in annual installments over thirty years. The Andersons would receive one-half of the crops raised on the farm by virtue of their one-half interest; they and the Victors would divide equally the other half "in accordance with the landlord-tenant relationship" created as to the Victors' one-half interest in the farm. The agreement also specified the manner in which various expenses would be shared by the parties.

The Victors had 28 head of stock cows and one bull which they left on the farm when the Andersons took possession. The parties intended to use those cattle as a basis for developing a cattle operation consisting of 300 animals. The contract provided that "the parties ... shall divide at date of sale of calf crop, [sic] equally the calf crops from said cattle."

The Andersons took possession of the farm in March, 1969. In 1969, the irrigation system which served one-half of the farm failed. Due to the resulting loss of production, the Andersons were forced to obtain loans to finance their farming operations. The Victors agreed to make financing available through Ace Realty. From 1969 through 1974, the Victors, through Ace Realty, made about 30 loans to the Andersons. Many of those loans had been paid off by the time this action came to trial.

The Victors became disenchanted with the situation. The Andersons had not made any payments on the land sale contract, and had not paid the balance on the loans which the Victors, through Ace Realty, had extended to them. The Victors believed that they had not received their share of the farm crops and cattle. Also, the Andersons had not reimbursed the Victors for farm expenses which the Victors had paid. Through Ace Realty, the Victors brought this suit for an accounting of all cattle proceeds and expenses, and of crop production for 1974 and ensuing years. The Andersons counterclaimed for farming expenses for which the Victors had not reimbursed them.

Following a trial to the court, the district judge entered a judgment granting relief to

each party on some of their claims. The district judge allowed the Victors interest on the amount of the promissory notes which the Andersons owed from the date the notes were due. However, he did not allow the Andersons to recover prejudgment interest on the claims decided in their favor. As noted, the Victors appealed and the Andersons cross-appealed.

## II. Victors' Appeal

The Victors argue that they should receive an additional award of damages. They contend that undisputed evidence supports additional awards to settle accounts on the hay crops, and the cattle and farm expenses.

### A. Hay

The Victors sued for recovery of the value of part of their share of hay raised by Anderson in 1975. The hay crop was divided each year, one-fourth to the Victors and three-fourth to the Andersons. Prior to 1975 the hay was piled in a single stack, was sold by Anderson, and the Andersons were to account to the Victors for a share of the profits. Beginning with 1975, Anderson was instructed by Victor to place the Victors' share in a separate stack and that the Victors would assume responsibility for selling their hay.

Based upon information given to them by the Andersons, the Victors argue that the Andersons owe them for about 170 tons of hay for 1975. The Victors' conclusion was reached from figures regarding the number of bales of hay produced in 1975 and the average weight of those bales. From this the Victors were able to calculate the total tonnage of their share of the hay. They then subtracted the tonnage of hay sold by them and arrived at a balance of 170 tons which they contend should have been remaining in their pile on the farm.

Anderson presented evidence to explain more fully what might have happened to reduce the amount of the Victors' share of the hay. He stated that, over the wintertime, shrinkage occurs in baled hay which would reduce its weight by ten to fifteen percent. He testified that, although the Victors sold their hay by the ton, one of the Victors' buyers took delivery of some of the hay without weighing the hay or counting the bales but simply took a fixed number of truckloads. Anderson also stated that part of the hay was used to feed cattle, by agreement with Victor, in 1975. Finally, Anderson explains that hay which was sold in 1977 included hay from the Victors' stack which had been harvested in both 1975 and 1976.

The trial court addressed the issue as follows:

Victor has complained that the hay he sold did not measure up to the share designated as his at the time of harvest. The contract provides:

"If the Seller shall desire to market his share of the crop grown on the property exclusive of cattle at some time other than the time for sale by the Buyer, Seller shall notify the Buyer of his intention to sell the crop separately."

In 1974 Victor did notify Anderson that he wanted his share of the hay separated at harvest time so he could sell it as he pleased. The hay was so divided at harvest. Under Idaho law landlord and tenant under a share crop lease own the crops as tenants in common. Absent provisions in the contract to the contrary, the landlord's share becomes his at harvest, subject to his management and control. Since the hay became Victors after separation, subject to his right to visit it, manage it, inspect it and sell it, Anderson will not be held responsible for a loss realized at time of sale absent a clear showing that the loss was caused by him.

The Victors now contend that the Andersons held the Victors' hay crop as bailees. Relying on *Compton v. Daniels*, 98 Idaho 915, 575 P.2d 1303 (1978), the Victors submit that the showing of any losses of hay, which would not have occurred in the absence of negligence, raises a presumption of negligence which the Andersons were required to rebut.

■ The Victors argue that the Andersons did not present sufficient evidence to overcome the presumption of negligence

and that they should be awarded the amount of that loss. However, the record does not show that the Victors presented the trial court with the theory that the hay was held in a bailment situation. The Victors must affirmatively show error on the record. *First Security Bank of Idaho, N.A. v. Absco Warehouse, Inc.,* 104 Idaho 853, 664 P.2d 281 (Ct.App.1983). The Victors will be held to the theory on which they tried the case before the district court. *E.g., Ford v. Lord,* 99 Idaho 580, 586 P.2d 270 (1978). We will not consider the contention that the Victors should prevail on a theory different from the theory on which they relied below. We conclude the trial court did not err in finding that Anderson was not responsible for any loss suffered by the Victors in regard to the 1975 hay crop.

*B. Expense Sharing*

■ The Victors contend that the court should have awarded them $2525 to compensate for an overpayment in that amount, which they paid to the Andersons. The court did not make such an award. The record shows that the Andersons applied the overpayment to other expenses for which the Victors were liable. In view of the record, the trial court's failure to make the requested award is not clearly erroneous and will not be overturned on appeal. *E.g., Viehweg v. Thompson,* 103 Idaho 265, 647 P.2d 311 (Ct.App.1982).

*C. Cattle*

■ The Victors claim that they should receive an award of $1207 as their share of proceeds of cattle sold by Anderson in 1974 and 1975. Anderson testified that he received $506.11 for the October, 1974 sale of a bull, a steer and a heifer, which he claimed to own, and $564.25 for the January, 1975 sale of his share of the 1974 calf crop. No evidence was presented to dispute Anderson's testimony in this regard. Anderson then testified that he sold the entire 1975 calf crop, and six of the Victors' 1974 calves, and kept the Victors' share of the proceeds of that sale to pay for the

Andersons' hay which had been fed to the Victors' calves in 1974 and 1975. Anderson did not testify as to the amount or the value of hay which he fed and for which he was entitled to reimbursement. He testified only that the proceeds of the Victors' 1974 calves and the Victors' share of the proceeds of the 1975 calf crop was set off against the value of the hay Anderson had supplied, $960.80. However, after reviewing all the testimony, we conclude that the trial court denied Anderson the setoff and awarded the Victors the $960.80 which Anderson had claimed. We conclude that the trial court's failure to make a larger award is not clearly erroneous and will not be disturbed on appeal. *E.g., Viehweg v. Thompson, supra.*

■ The Victors also assert that they were not reimbursed for their one-half share of the proceeds of the 1973 sales of cattle. They claim that they should be awarded $1562.87, half of the $3125.95 which the Andersons claimed as income from cattle sales on their 1973 tax return. Alfred Anderson testified that this income came from the sale of fourteen calves for $2192.50 and of five cows for $2290.70. He testified that he kept half of the proceeds of the sale of calves and all of the proceeds of the sale of the cows, and reported that sum on his income tax return. One of the Victors' exhibits show that they received $1096.25 for the sale of cattle six days after the fourteen calves were sold. Anderson admitted owing only $1145.35 as the Victors' share of the proceeds from the sale of the five cows. The Victors implicitly acknowledged that this amount was included in the award which the trial court made. The trial court's failure to make the additional award which the Victors request here is not clearly erroneous and will not be disturbed on this appeal. *E.g., Viehweg v. Thompson, supra.*

■ The Victors also contend that testimony concerning hay supplied to the cattle as feed, for which the Victors were liable, should not have been admitted because they were precluded by a pretrial order from contesting the division of hay prior to

1973. Four weeks before trial was to begin and almost four years after they had filed their original complaint, the Victors had moved to amend their complaint to require an accounting of hay production and sales for the years 1969–1973.

In denying the motion to amend, the trial court stated:

[Victor] now says he has recently learned of matters prior to 1973 which are important to the final disposition of the case. He does not outline the nature of these important transactions or show why they are pertinent to the decision herein. The case as established by the pleadings made does not require such accounting.

The Victors do not challenge this ruling.

The evidence to which the Victors object is evidence which shows that the Andersons were entitled to an offset, against the Victors' claims, for the value of feed given to the cattle, for which the Victors were liable. The trial court concluded that there was no conflict between the admission of the evidence of hay fed to the cattle, an expense of raising the cattle, and the order limiting the admission of evidence concerning crops grown before 1974 generally. The trial court had construed the Victors' original complaint as requesting an accounting of cattle production, sales and expenses from 1969 to the date of the complaint, and both parties introduced evidence accordingly. However, the Victors requested an accounting only of crops grown during and after 1974. The pleadings clearly raised the issues to which the challenged evidence was directed at such a time as to allow both parties to prepare to contest the issues. We hold that the trial court did not abuse its discretion in admitting the challenged evidence. That the Victors' tardy motion to amend the pleadings to raise other issues was denied does not affect our determination.

### D. Sheep and Swine

■ The Victors argue that they should receive a share of income from the Andersons' sale of sheep and swine. They argue that the contract of purchase requires that all cattle on the property, except the Vic-

tors' original herd, must be jointly owned. They ask us to rule, as a matter of law, that the term "cattle" includes sheep and swine.

The contract forbade the Andersons from keeping their "own herd of cattle on said premises" to avoid "the resulting confusion" of having two separately-owned herds. The contract did allow the Andersons to maintain milk cows or calves to provide a source of milk or meat. We believe that the purpose of this part of the contract—to avoid confusion—mandates the conclusion the parties did not intend the term "cattle" to include sheep and swine. We hold that, for the purpose of this contract, sheep and swine are not included in the term "cattle". Therefore, the trial court's failure to award half of the proceeds of sales of the Andersons' sheep and swine was not error.

### E. Hay Cutting Expense

■ The Victors assert that the Andersons should not have been awarded hay-cutting expenses incurred in harvesting the Victors' share of the hay. The contract provides that the Victors "shall pay one-fourth of all normal harvesting expenses, including ... bailing [sic], hauling and stacking of hay ...." The Victors request that we apply the maxim "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of another) to determine that the inclusion of specific activities —baling, hauling and stacking of hay—implies an intent to exclude all other activities from the meaning of "harvesting". That maxim "applies to contracts ... and hence, the expression in a contract of one or more things of a class implies the exclusion of all not expressed." 17 Am.Jur.2d *Contracts* § 255 (1964). (Footnotes omitted.)

■ We must construe this contract so as to give effect to every part of it, if possible. *Wright v. Village of Wilder,* 63 Idaho 122, 117 P.2d 1002 (1941). Here, the phrase "all normal harvesting expenses" sufficiently expresses the range of activities to be included as expenses so as to make that maxim inapplicable. To inter-

pret the contract otherwise would result in nullifying the phrase "all normal harvesting expenses." This we refuse to do. The trial court found that the contract did not limit harvest expenses to baling, hauling and stacking; rather it included those activities without limitation. This finding of fact is supported by substantial, competent evidence. We will not disturb it on appeal. *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983).

### F. Attorney Fees and Costs at Trial

 The Victors challenge the trial court's disposition of costs and attorney fees. The trial court ordered each side to bear its own costs and attorney fees. The court noted that each party had prevailed on some issues and each was at fault on some issues. The trial court further stated that

[e]ach [party] was about equally justified in bringing suit. It appears to me that the liability for the incurring of costs and attorney fees is about equal. In fact the suit was necessary to resolve the difficulties confronting both sides.

The Victors claim that the trial court should have awarded attorney fees to them because the promissory notes—evidencing the loans made to the Andersons—provided for such an award. Some of the notes contain language providing that, if a suit is instituted to collect the balance due, the promisor would pay "such additional sum as the Court may adjudge reasonable as attorney fees." The other notes simply provide that "the undersigned hereby agree to pay a reasonable attorney fee" if an attorney collected the note, whether with or without suit.

It is clear that the Andersons prevailed on their counterclaim and were entitled to an award of attorney fees pursuant to the land sale contract. Also, the Victors prevailed on their claim concerning the promissory notes, which provided for payment of attorney fees. The court was entitled to set the amount of each award of attorney fees. We uphold the trial judge's decision to award no fees simply on the ground that

both parties partially prevailed, under I.R.C.P. 54(d)(1)(B). We hold the trial court did not abuse its discretion by declining to award fees to either side.

 The Victors also contend that they should have been awarded the amount of their costs, pursuant to I.R.C.P. 54(d)(1), because they were the prevailing party. Rule 54(d)(1)(B) gives the trial court discretion to determine which is the prevailing party and identifies the factors to be considered in making that determination. *See Chadderdon v. King*, 104 Idaho 406, 659 P.2d 160 (Ct.App.1983). The court stated that each party had prevailed in part, and ordered each party to bear its own costs. We hold that the trial court did not abuse its discretion in regard to the costs.

### G. Impartial Decision

 Finally, the Victors contend that the trial judge could not render a fair and impartial decision because he was confused about the case and "could not have had any comprehension of the first two days of testimony." They draw this conclusion from the judge's request for clarification of conflicting statements that, on one hand, both parties agreed that the Andersons had paid everything that they owed, while, on the other hand, the Victors insisted that they had not received money which was due them. The Victors do not show, on the record or otherwise, that the judge rendered an unfair or partial decision, nor do they show any error which would entitle them to a favorable decision on this appeal. The appellant has the burden of showing error; we will not presume that the trial court erred. *First Security Bank v. Absco, supra*. The Victors have not carried their burden of showing error here.

### H. Attorney Fees on Appeal

 The Victors request an award of attorney fees for this appeal pursuant to I.C. § 12–121 and I.R.C.P. 54. Rule 54(e)(1) limits awards of reasonable attorney fees to the prevailing party. The Victors have

not prevailed on this appeal. Therefore, we decline to award them attorney fees.

## III. Andersons' Cross-appeal

On their cross-appeal, the Andersons contend that the court should have awarded them prejudgment interest on the damages awarded them on their counterclaim. In the alternative, they argue that the Victors' award should be reduced by the amount of their award before interest is computed on the Victors' award. Also, the Andersons assert that the trial court should have awarded them the amount of attorney fees which they incurred in compelling the Victors to pay their share of certain farm expenses. Finally, they request an award of attorney fees for this appeal.

We note that the first two issues are identical, for all practical purposes. Finding in favor of the Andersons on either issue will have the same net result on the Victors' net award. We will consider them as one.

■■■ We note first that the trial court stated that it would not award the Andersons interest on "this disputed, unlitigated amount." However, whether prejudgment interest should be awarded does not depend upon whether the amount claimed is disputed or unlitigated. *E.g., Giant Food, Inc. v. Jack I. Bender & Sons,* 399 A.2d 1293, 1302 (D.C.App.1979); *Fluor Corp. v. U.S. ex rel. Mosher Steel Co.,* 405 F.2d 823, 829 (9th Cir.1969). If it did, prejudgment interest would never be awarded—a party could delay payment without incurring interest expense by disputing and litigating any claim. We conclude that the court erred to the extent that it based its decision on whether a claim was disputed or litigated.

The question of whether prejudgment interest should be awarded is one which is rarely considered in depth. *See, e.g.,* CORBIN on CONTRACTS, § 1046, note 69 ("the question of interest is one much more often passed upon than carefully considered by courts."). *But see Giant Food, Inc. v. Jack I. Bender & Sons, supra;* Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc., 416 F.2d 207 (8th Cir.1969); Mall Tool Co. v. Far West Equip. Co., 45 Wash.2d 158, 273 P.2d 652 (1954). Courts are becoming increasingly liberal in awarding interest as damages for the breach of a contract where the parties have failed to provide for interest following a breach, CORBIN, *supra* at § 1046, or to compensate for the use or forebearance of money or for its improper retention. *Giant Foods, supra.*

■■■ In Idaho, an award of prejudgment interest is proper when the amount of the contested liability is liquidated, or is capable of ascertainment by mere mathematical process, to fully compensate the injured party. *Mitchell v. Flandro,* 95 Idaho 228, 506 P.2d 455 (1973); *Farm Development Corp. v. Hernandez,* 93 Idaho 918, 478 P.2d 298 (1970) ("the sum due is sufficiently definite if it ... can be determined from established market prices.") RESTATEMENT (Second) OF CONTRACTS § 354, comment c. *Accord Guyman v. Anderson,* 75 Idaho 294, 271 P.2d 1020 (1954) (cited approvingly in *Mitchell v. Flandro, supra,* and *Farm Development Corp. v. Hernandez, supra );* Hendrix v. Gold Ridge Mines, Inc., 56 Idaho 326, 54 P.2d 254 (1936). The record shows that the trial court awarded the Andersons compensation for harvesting the Victors' share of the hay crop, based upon established market prices. Interest should have been awarded on the Andersons' hay harvesting expenses from the time that they were due, or the hay harvesting expenses should have been deducted from the balance of the Victors' promissory notes as those expenses came due. *Accord Guyman v. Anderson, supra.* We remand this issue to the trial court, to recompute the amount of the judgment.

Finally, the Andersons assert that they should have been awarded attorney fees following a post-trial hearing to compel the Victors to pay their share of farm expenses. Following the trial, the trial court had determined that each party had pre-

vailed on some issues, so each should pay its own costs and attorney fees. At the post-trial hearing, the Andersons prevailed on both of their claims for expenses. The Victors presented no evidence to dispute the amount of expenses due, but did argue that they were not contractually liable for any part of one of the claimed expenses, the expense of fertilizer. However, the evidence shows that the Victors had knowingly and willingly paid a share of that expense each time it had been incurred.

Because this suit was brought in 1976, the court could award attorney fees in its discretion and was not limited by I.R.C.P. 54(e)(1). *Duff v. Bonner Building Supply Inc.*, 103 Idaho 432, 649 P.2d 391 (Ct.App.1982). Absent an abuse of that discretion, the award, or denial, of attorney fees will not be disturbed on appeal. *Id.* In denying an award of attorney fees, after the post-trial hearing, the district judge stated that the matter of this pending litigation "was mentioned at the close of trial." However, we find nothing in the record to substantiate this statement. Nor do we find any statement of reason underlying the court's exercise of discretion. Therefore, we remand this issue to the district court for further consideration.

The Andersons request an award of attorney fees on their cross-appeal, pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1). Those provisions allow an award of attorney fees to the prevailing party in a civil action if that action is "brought, pursued or defended frivolously, unreasonably or without foundation." We conclude that the Victors did not defend against this appeal frivolously, unreasonably or without foundation. We decline to award attorney fees to the Andersons.

We affirm the judgment of the trial court as to the Victors' appeal. We reverse the judgment as it relates to the Andersons' cross-appeal, and remand the case to the district court to recompute the amount of the judgment, and to reconsider the Andersons' request for attorney fees incurred in connection with the post-trial hearing. Costs on the appeal and cross-appeal to the Andersons. No attorney fees awarded.

BURNETT and SWANSTROM, JJ., concur.