729 P.2d 1098

**Grover NELSON, Plaintiff-Appellant,**

v.

**HOLDAWAY LAND AND CATTLE COMPANY, Defendant-Respondent.**

**No. 16080.**

Court of Appeals of Idaho.

Dec. 8, 1986.

John B. Kugler, Pocatello, for plaintiff-appellant.

Craig R. Jorgensen and Kenneth E. Lyon, Jr. (Lyon & Jorgensen), Pocatello, for defendant-respondent.

WALTERS, Chief Judge.

Cattle belonging to the defendant, Holdaway Land and Cattle Company (Holdaway) trespassed onto the agricultural lands of Grover Nelson. Nelson captured the cattle and cared for them until they were returned to Holdaway. In a prior appeal, this case was remanded to the district court

with directions to award Nelson nominal damages for the trespass, to make specific findings regarding the reasonable costs incurred by Nelson in caring for the livestock, and then to award Nelson those costs. *Nelson v. Holdaway Land and Cattle Company*, 107 Idaho 550, 691 P.2d 796 (Ct. App. 1984) (*Nelson I*). The district court complied and Nelson now appeals from the judgment entered by the district court. Nelson's appeal encompasses the district court's procedures, calculations, and conclusions in rendering its decision regarding the damages. We affirm.

The facts of this case are detailed in *Nelson I* and only need be briefly recounted here. In 1975 and previous years, Holdaway's cattle trespassed onto Nelson's agricultural lands, causing damage. In 1975, Nelson corralled approximately sixty-five of Holdaway's trespassing cattle. Nelson kept the cattle for about sixty days, feeding and caring for them before Holdaway repossessed the animals. On August 14, 1975, Nelson sued for the damages to his land and for his costs involved in caring for the cattle. The district court held for Holdaway, but on appeal, this Court vacated that judgment and remanded with instructions to award Nelson nominal damages for the trespass, plus the reasonable costs of caring for those livestock captured within five days prior to Nelson's suit or thereafter. *See* I.C. § 25–2408.

On remand, the district court directed both parties to submit written proposals concerning the amount of nominal damages and the amount of damages resulting from Nelson's caring for the cattle, including the reasons and bases for the amounts proposed. Holdaway submitted a detailed proposal. Nelson however did not submit a proposal. Rather, on the day set for oral argument on the matter, Nelson demanded an "evidentiary presentation." The district court denied that request. The district court subsequently awarded Nelson $350 in nominal damages and approximately $830 in expenses for caring for the cattle. Nelson asserts that the award of damages for the care of the cattle was erroneous and inadequate and that the district court erred in refusing to permit an evidentiary presentation.

Nelson kept the cattle approximately sixty days. The district court determined that it cost $69.20 to care for each of the sixty-five cattle for the time during which Nelson kept them. This figure apparently was taken from the proposal submitted by Holdaway at the court's direction. The court determined that twenty-four cattle were captured within the time period specified in I.C. § 25–2408. The court further found that it was unreasonable for Nelson to have kept the animals for more than thirty days. Hence, the court multiplied twenty-four (the number of animals which were caught within or after the five-day period preceding the filing of the complaint) times the cost of care per animal ($69.20) and divided that figure in half because the cattle had been kept approximately sixty days. Thus calculated, the court arrived at damages amounting to $830.40.

■ Nelson's primary challenge to the amount of damages for care of the cattle centers around the court's refusal to allow an evidentiary hearing in place of the requested written proposals. The record contains no explanation, nor has any reason been presented to this Court, why Nelson did not submit a written proposal to the district court. The same district judge who determined damages also presided over the original trial. Our directions to the district court were to calculate the reasonable costs for caring for the cattle. Whether additional evidence was needed was discretionary with the district court, as was the court's manner of determining what those costs were. *See Tranel v. Gilkey*, 524 P.2d 580, 584 (Wyo. 1974), *appeal after remand, Potter v. Gilkey*, 570 P.2d 449 (Wyo. 1977) (on remand district court allowed to determine costs of caring for cattle "with or without receipt of additional evidence"); *Hulihee v. Heirs of Hueu(k)*, 556 P.2d 920 (Haw. 1976) (court may make corrections in findings without hearing new evidence). A calculation based on reason-

ableness does not necessarily connote a precise calculation detailing every penny spent and its allocation. We have reviewed Nelson's testimony at trial about his costs in caring for the cattle. Giving Nelson credit for some costs which are questionable, such as expenses which were not actually paid but said to be "owed," the record would support a finding that Nelson's expenses totalled approximately $4,618.34, or a cost per animal of $71.05. The difference between that amount and the trial court's award of $69.20 is $1.85 per animal, or a difference in the total costs of care for the cattle of $22.40. This difference, when compared to the overall damages award, is negligible. Here, we conclude that the district court's determination was reasonable and that Nelson has not shown otherwise.

We think it was a reasonable approach for the district court to order written proposals as an aid in determining damages. As noted, the district judge had already presided over the trial. Obtaining written proposals allowed the court to examine the kinds and relative amounts of specific items of damage claimed. It provided an opportunity for the parties to state effectively their respective positions based upon evidence already in the record. Nonetheless, Nelson argues that some items of damage, such as the cost of rounding up the cattle, were not considered in the district court's calculations. It is true that the district court did not include that cost in its calculations. However, we incorporated those costs in our determination of what the record would support as damages for the care of the cattle. As we have indicated, the difference between our figure and the district court's figure is negligible. That negligible difference falls far short of rendering the district court's determination unreasonable.

The same conclusion holds true for Nelson's argument that no evidence was submitted as to the value of his wife's ten

hours of labor in caring for the cattle. The district court accepted two dollars per hour as being a reasonable value. However, no actual evidence was submitted about the value of her labor. Thus, the district court should not have used the two dollar per hour figure without some basis for it. However, even if the district court had accepted ten dollars per hour as being reasonable (the same value Nelson assigned to his own labor), that valuation would have added but $14.76 to the total damage figure.[1] Again, that minor difference, resulting from the highest, reasonably possible value for Nelson's wife's labor does not make the district court's determination unreasonable.

Nelson next argues that the evidence presented at trial relating to the costs of caring for the cattle dealt only with the costs for *all* the cattle. He asserts that no evidence was presented about the particular costs involved—in caring for *specific* cattle—which would be recoverable under *Nelson I.* This Court's determination that Nelson could recover only part of his costs was based on a statutory limit. *See* I.C. § 25–2408. The district court determined the costs of caring for those cattle based on the proposals submitted by Holdaway. However, Holdaway's figures were in turn based on testimony by Nelson concerning his expenses incurred in caring for the cattle. The district court and Holdaway, in its proposal, accepted Nelson's testimony that the costs were reasonably incurred. As noted, our calculation of the cost of caring for the cattle, based on a review of Nelson's testimony, produced a similar figure. Nevertheless, Nelson suggests that *some* cattle cost more to care for than others. While that may be somewhat true, it does not mean that the district court's determination was unreasonable. For example, one of the costs was for $6.32 for salt. Any attempt at allocating this salt

---

1. The ten hours of labor by Nelson's wife was based on care of all sixty-five of the cattle. We are concerned only with the costs incurred for twenty-four cattle for thirty of the sixty days the cattle were kept. Hence, $80 (the difference between $10 per hour for ten hours and $2 per hour for ten hours) divided by sixty-five head of cattle times twenty-four head times thirty days equals $14.76.

among the individual cattle, as implicitly required by Nelson's argument, strains credulity. We find Nelson's argument to be meritless. We conclude that the district court did as it was directed on remand. In our view, Nelson's assertions that the evidence does not support the district court's determination of damages reflects to a large degree Nelson's failure to prove his damages. We find the method and the resulting determination of costs awarded to Nelson for caring for the cattle to be reasonable.

In respect to the award for nominal damages, Nelson contends that the district court did not allow recovery for damages caused by a trespass occurring in 1972. The original appeal in this case noted that Nelson had, according to the trial judge, "failed to prove by a preponderance of the evidence that his crops had been damaged by the straying cattle during 1975 and *prior years.*" [Emphasis added.] *Nelson I, supra,* 107 Idaho at 552, 691 P.2d at 798. This statement indicates that the district court did consider Nelson's assertions concerning damage to his crops in 1975 and prior years, even though 1972 was not mentioned specifically. In *Nelson I,* this Court remanded with directions to award nominal damages for the trespass. Although most of the discussion in *Nelson I* dealt with the trespass in 1975, as noted, Nelson failed at trial to prove damages in *any* year, including 1972 and 1975. Regardless of which year is in question, Nelson failed to prove actual damages. Therefore, only nominal damages were appropriate.

Holdaway's written proposal suggested that one dollar was appropriate for a "nominal damages" award. Nelson offered no counter suggestion that another amount would be more proper. The district court awarded $350 as nominal damages for the trespass. Quite frankly, we do not know how the district court reached a conclusion of $350 as being "nominal." However, in light of the significant difference between the suggested one dollar and the awarded $350, we cannot conclude that the award was unreasonably small.

Nelson also contends that he should receive prejudgment interest on the expenses he incurred for caring for the cattle. We hold that he should have not have received such interest, and that the district court was correct in denying Nelson's request for prejudgment interest. In Idaho, prejudgment interest is generally not allowed in either contract or tort cases where the amount of the claim is unliquidated or is incapable of ascertainment by mere mathematical process. *Davis v. Professional Business Services,* 109 Idaho 810, 815 n. 2, 712 P.2d 511, 516 n. 2 (1985); *Ace Realty, Inc. v. Anderson,* 106 Idaho 742, 682 P.2d 1289 (Ct.App.1984). This general rule of limitation is "apparently based upon equitable considerations." *Bergkamp v. Carrico,* 108 Idaho 476, 481, 700 P.2d 98, 103 (Ct. App. 1985) (*quoting United States Fidelity and Guaranty Co. v. Clover Creek Cattle Co.,* 92 Idaho 889, 900, 452 P.2d 993, 1004 (1969)).

Nelson's recovery does not appear to be based specifically in tort nor in contract. Rather, it is a recovery based on statutory implications. However, we perceive of no reason to apply a rule different from that used in contract or tort cases. In this case the damages incurred by Nelson were neither liquidated nor ascertainable by mere mathematics. At the time Nelson took possession of Holdaway's cattle, neither party had any idea how long Nelson would retain the livestock or how much the reasonable costs of caring for them would be. It was not until the district court, on remand, determined the recoverable loss—based on reasonably incurred costs and fixing the amount of a nominal award—that either party had any idea of the extent of damages. Therefore the damages were neither calculable nor liquidated until the district court rendered its decision on remand. Accordingly, Nelson was not entitled to any prejudgment interest.

Nelson also asserts that he was entitled to attorney fees at trial and on appeal. Nelson's argument for attorney fees at trial, as far as we can determine, is

that—because this Court vacated the trial court's original decision—Holdaway's defense must have been frivolous and accordingly, Nelson should have received attorney fees at trial. We, note that an award of attorney fees for the trial in this case was solely within the discretion of the trial court. The exercise of that discretion was not subject to the requirements of I.R.C.P. 54(e) inasmuch as the case was filed in 1975, before the effective date of Rule 54(e). *Haskin v. Glass,* 102 Idaho 785, 640 P.2d 1186 (Ct. App. 1982). However, Nelson's arguments present nothing to this Court that would establish that the trial judge abused his discretion in denying attorney fees at trial. In respect to attorney fees on appeal, Nelson argues that the district court's decision on remand was "so lacking in sound judgment and reason" that Holdaway should have settled the case or at least should have agreed to a remand for further proceedings. We are not persuaded by this argument. Because we affirm the judgment, Nelson's request for attorney fees on appeal is denied.

The judgment of the district court is affirmed in all respects. Costs to respondent. No attorney fees on appeal.

BURNETT and SWANSTROM, JJ., concur.