[Nos. F003767, F004078. Fifth Dist., July 31, 1985.]

SHANE PAUL NIX, a Minor, etc., et al., Plaintiffs and Appellants, v.
PREFORMED LINE PRODUCTS COMPANY et al.,
Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

James L. Faulkner for Plaintiffs and Appellants.

Parichan, Renberg, Crossman & Harvey, Charles L. Renberg, Clifford, Jenkins & Brown, J. Craig Jenkins, Borton, Petrini & Conron, John F. Petrini and Randall L. Harr for Defendants and Respondents.

OPINION

HANSON (P. D.), Acting P. J.—

I

On September 1, 1982, Ronald Nix (Ronald), father of appellants Shane and Nicholas Nix, was severely injured when a wooden utility pole broke and caused him to fall to the ground. Ronald was working as a lineman for Humes Electric, Inc. (Humes) on a Chevron U.S.A., Inc. (Chevron) oil lease. Because of his severe injuries he no longer can speak nor take care of himself. A fellow lineman was killed in the accident.

A complaint was filed on behalf of Paula Nix, and Paula Nix as guardian ad litem for Ronald Nix (her incompetent husband) and Nicholas and Shane Nix (their children). The complaint alleges 10 separate causes of action

based upon Ronald's injuries. The tenth cause of action seeks, on behalf of Nicholas and Shane Nix, damages for negligent infliction of emotional distress and loss of parental consortium.

Respondent Preformed Line Products Company (Preformed) answered the complaint and filed a demurrer to the tenth cause of action. Respondent Chevron also filed a demurrer to the tenth cause of action. Both demurrers were granted without leave to amend, resulting in dismissal and this appeal. Respondent Humes submitted a brief because it faces potential liability on a cross-complaint filed by Chevron for equitable indemnity and express contractual indemnity. Respondent Humes earlier obtained a summary judgment and dismissal of plaintiffs' complaint against Humes on the basis that Ronald was an employee and acting within the course and scope of his employment when the accident occurred.

## DISCUSSION

### *Action for Loss of Parental Consortium.*

Appellants urge that because of society's increased recognition of the need to protect the rights of children, the California Supreme Court's reasons for denying a cause of action for loss of parental consortium must be reevaluated. Appellants' challenge is based in part on recent holdings in other jurisdictions recognizing such a cause of action.

The issue of parental consortium was addressed in *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858], a case directly on point. In *Borer,* the California Supreme Court addressed the issue of extending or limiting liability for loss of consortium as a question of policy. Its major concern was to limit the legal consequences of wrongs to a controllable degree. (*Id.,* at p. 446.)

Only three years before *Borer,* the Supreme Court recognized the existence of a cause of action for loss of spousal consortium in *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669]. To deny a similar cause of action to the children of an injured parent, the *Borer* court limited the holding of *Rodriguez* and attempted to distinguish its facts. The *Rodriguez* court used a basic foreseeability test to find liability: "In our society the likelihood that an injured adult will be a married man or woman is substantial, clearly no less than the likelihood that a small child's mother will personally witness an injury to her offspring. And the probability that the spouse of a severely disabled person will suffer a personal loss by reason of that injury is equally substantial.

"`. . . . . . . . . . . . . . . . . . . . . . . . . . . .

"`. . . While engaging in their activities, the defendants clearly came under the comprehensive common law duty of due care with tort liability for its breach. If, as alleged, they acted without due care causing serious bodily injury to the husband and consortium deprivation to the wife, they should, in all justice, be held liable in fair measure for the respective losses. *Those losses were immediate and consequential rather than remote and unforeseeable* and, there being no sufficient countervailing policy, the law now rightly views them as remediable by the responsible tortfeasors.'`" (*Id.*, at pp. 400-401, fn. omitted; quoting from *Ekalo* v. *Constructive Serv. Corp. of Am.* (1965) 215 A.2d 1, 5, 8, italics in original.)

The court stated that because loss of consortium is principally a form of mental suffering, a jury determination of damages should be no more difficult than in cases involving personal injury where damages for pain and suffering are awarded. (*Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 401.) "`Money is a poor substitute for the loss of an only child or the pain resulting from serious injuries. Likewise, it cannot truly compensate a wife for the destruction of her marriage, but it is the only known means to compensate for the loss suffered and to symbolize society's recognition that a culpable wrong—even if unintentional—has been done.' [Citation.] That the law cannot do enough, in short, is an unacceptable excuse for not doing anything at all." (*Id.*, at p. 402.) Finally, the court concluded that the alleged inability to define potential recoveries in future cases did not justify the denial of a recovery in *Rodriguez*. Future cases would be subject to the same guidelines used in *Rodriguez*—the general principles of negligence law limiting liability to persons and injuries within the scope of the reasonably foreseeable risk. (*Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 403.)

The *Borer* court did not feel compelled by *Rodriguez* to conclude that any foreseeable injury to a legally recognized relationship necessarily created a cause of action. The *Borer* court explained *Rodriguez* merely held that the policy arguments against liability did not justify denying a cause of action in a marital relationship. (*Borer* v. *American Airlines, Inc., supra,* 19 Cal.3d at p. 446, 448.) The court was not persuaded to reach the same conclusion in a parent-child relationship.

The nine children of Patricia Borer sought damages for loss of their mother's services, society, companionship, affection, tutelage, direction, guidance, instruction, and aid in personality development when she was struck by a lighting fixture cover at the American Airlines terminal at Kennedy Airport. (*Borer* v. *American Airlines, Inc., supra,* at p. 445.) In denying

the cause of action, the court discussed three specific factors. First, the court believed strong policy reasons opposed the extension of liability for such damages in the parent-child context: "Loss of consortium is an intangible, nonpecuniary loss; monetary compensation will not enable plaintiffs to regain the companionship and guidance of a mother; it will simply establish a fund so that upon reaching adulthood, when plaintiffs will be less in need of maternal guidance, they will be unusually wealthy men and women. To say that plaintiffs have been 'compensated' for their loss is superficial; in reality they have suffered a loss for which they can never be compensated; they have obtained, instead, a future benefit essentially unrelated to that loss." (19 Cal.3d at p. 447.) The court was concerned that the public would be burdened with higher insurance premiums. The court also feared the cost of administration would be expensive, because every injury to a parent would trigger an action for loss of consortium. Balancing the inadequacy of monetary damages to compensate wholly for the loss suffered against the social costs incurred in paying the awards, the court concluded there were strong reasons for refusing to recognize the parental consortium cause of action.[1] (*Borer* v. *American Airlines, Inc., supra,* 19 Cal.3d at p. 447.)

The court refused to follow the *Rodriguez* decision for a second reason, based on the intangible character of the harm suffered. "Difficulty in defining and quantifying damages leads in turn to risk of double recovery: to ask the jury, even under carefully drafted instructions, to distinguish the loss to the mother from her inability to care for her children from the loss to the children from the mother's inability to care for them may be asking too much." (*Id.,* at p. 448.) The court was impressed with a potential danger of extending a tortfeasor's liability for a single transaction beyond that which would be fair. (*Id.,* at p. 449.)

The third justification for the *Borer* holding concerned its methodology. The *Borer* court did not consider its holding inconsistent with the principles of tort law previously laid down in other decisions by the court.[2] The court distinguished such cases, saying they did not involve the creation of a new cause of action for a solely intangible injury with the attendant problems of multiple claims and liability. (*Id.,* at p. 450.) The court concluded all these factors were enough to deny a claim for parental consortium.

---

[1]To avoid misunderstanding, the court pointed out that its decision to refuse to recognize a cause of action for parental consortium did not suggest the rejection of all recoveries for intangible losses. The court stated each claim had to be judged on its own merits. (*Borer* v. *American Airlines, Inc., supra,* 19 Cal.3d at p. 447.)

[2]*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], and *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].

Justice Stanley Mosk, in dissent, severely criticized the *Borer* majority opinion saying the court incorrectly interpreted the *Rodriguez* opinion in order to support its holding in *Borer.*

Justice Mosk noted that in *Rodriguez* the court found loss of consortium principally a form of mental suffering and compensable in damages. The *Borer* court's finding that loss of consortium was an "'intangible, nonpecuniary'" loss which could never be compensated was in direct contrast. (*Borer, supra,* at p. 453.) Justice Mosk found the loss of parental consortium no more nor less intangible than the loss suffered by Mrs. Rodriguez—yet in terms of spousal consortium, the Supreme Court found the valuation problem to be "difficult but manageable." (*Id.,* at p. 454.)

As to the majority's concern in *Borer* of a potential for double recovery, Justice Mosk noted the identical problem had been dismissed by the court in *Rodriguez;* the court explained that the "'risk'" can be avoided by using procedural devices such as joinder of actions and appropriate jury instructions. (*Borer, supra,* at p. 455.)

Justice Mosk also disputed the majority's attempt to distinguish the *Rodriguez* case by arguing that a spousal action for loss of consortium rests in large part on the impairment of the sexual life of the couple. "No such thing," said Mosk; *Rodriguez* reasoned the nonsexual loss suffered by a spouse is at least as great as the sexual loss. (*Id.,* at p. 455.) Mosk further noted:

"'[T]he spouse of such a man cannot expect him to share the same concern for *her* problems that she experienced before his accident. As several of the cases have put it, she is transformed from a happy wife into a lonely nurse. Yet she is entitled to enjoy the companionship and moral support that marriage provides *no less than its sexual side,* and in both cases no less than her husband.'

". . . . . . . . . . . . . . . . . . . . .

"*Rodriguez* cannot fairly be limited, as the majority imply, to sexually active couples: . . . surely the majority do not mean to hold that sexual activity is more worthy of the law's concern than the affection, comfort, and guidance which loving parents bestow on their children." (*Borer, supra,* 19 Cal.3d at p. 456.)

Finally, Justice Mosk reminded the majority that the California courts have never been hesitant to recognize new legal theories or causes of action. This was in reference to the majority's mention that no other state acknowl-

edged a cause of action for loss of parental consortium. Justice Mosk again reminded the court "the rights of a proposed new class of tort plaintiffs should be forthrightly judged on their own merits, rather than by indulging in gloomy speculation on where it will all end." (*Borer, supra,* 19 Cal.3d at pp. 458, 460.)

■ Decisions of the Supreme Court that have never been reversed or modified are binding (*County of Butte* v. *Superior Court* (1960) 178 Cal.App.2d 310, 311) [2 Cal.Rptr. 913]; we must follow the holding in *Borer.* It is not the function of an intermediate court to reexamine a Supreme Court decision for the purpose of enunciating and enforcing a different rule of law. (*Goncalves* v. *S. F. Unified School Dist.* (1958) 166 Cal.App.2d 87, 89 [332 P.2d 713].)

■ *Borer* is directly on point; its reasons for denying a cause of action for loss of parental consortium have not been supplanted. No court in California has ruled that *Borer* should be overruled. In addition, with the exception of one case,[3] the availability of loss of consortium actions has not been extended beyond the spousal context in California. Under the authority of *Borer,* we can only agree with the sustaining of the demurrer without leave to amend.

However, at the time of the *Borer* decision, as noted by the *Borer* court in support of its holding, no state recognized such a claim. (*Borer* v. *American Airlines, Inc., supra,* 19 Cal.3d at p. 449.) Since the *Borer* decision, a change of some importance has occurred in the development of loss of parental consortium actions in other jurisdictions.

. Massachusetts was the first state to recognize a cause of action for loss of parental consortium. In *Ferriter* v. *Daniel O'Connell's Sons, Inc.* (1980) 381 Mass. 507 [413 N.E.2d 690, 11 A.L.R.4th 518], the Massachusetts Supreme Court noted that minors have a strong interest in their parents' society—an interest closely analogous to that of the wife, the former relationship no less intense than the latter. (*Id.,* at p. 692.) The court thought it entirely appropriate to protect the child's reasonable expectations of parental society when the parent suffered negligent injury rather than death, noting that similar damages were available to a child under a wrongful death statute. (*Id.,* at p. 695.)

---

[3] The case of *Butcher* v. *Superior Court* (1983) 139 Cal.App.3d 58 [188 Cal.Rptr. 503, 40 A.L.R.4th 539] recognized a cause of action for loss of consortium brought by an unmarried cohabitant of the negligently injured victim. The *Butcher* court held that there had to be a showing that the nonmarital relationship is both stable and significant, and that it possesses every characteristic of the spousal relationship except formalization. This case, along with cases from other districts denying a similar cause of action, was granted a hearing by the Supreme Court. The appeal was ultimately dismissed, leaving this conflict unresolved.

Refusing to wait for legislative recognition of the cause of action, the Massachusetts court stated: " 'In a field long left to the common law, change may well come about by the same medium of development. Sensible reform can here be achieved without the articulation of detail or the creation of administrative mechanisms that customarily comes about by legislative enactment. . . . In the end the Legislature may say that we have mistaken the present public understanding of the nature of the [parent-child] relation, but that we cannot now divine or anticipate.' " (*Ferriter* v. *Daniel O'Connell's Sons, Inc.*, *supra*, 413 N.E.2d at pp. 695-696.) Minors in Massachusetts must show they are minors dependent on the parent, and the dependence is rooted not only in economic requirements, but also in "filial needs for closeness, guidance and nurture." (*Id.*, at p. 696.)

Michigan was the next state to recognize the cause of action. In *Berger* v. *Weber* (1981) 411 Mich. 1 [303 N.W.2d 424], the Michigan Supreme Court rejected various policy reasons supporting the denial of a cause of action for loss of parental consortium. Like the Massachusetts *Ferriter* court, the Michigan *Berger* court concluded that a lack of precedent could not relieve it of the responsibility to adjudicate each claim on its own merits. The court was not persuaded that the child's cause of action could be distinguished from a spouse's cause of action. The court addressed the issue of multiplicity and stated that the rights of a new class of tort plaintiffs should be judged on their own merits, rather than, to paraphrase Justice Mosk's words in the dissent in *Borer* v. *American Airlines, Inc.*, *supra*, 19 Cal.3d at page 460, gloomily speculating at the dreaded outcome. (303 N.W.2d at p. 426.) The court stated with regard to higher insurance rates that if the child receives the immediate benefit of the compensation, society as a whole benefits when the child is able to function without emotional handicap. Finally, the court considered loss of consortium damages to be no more speculative than damages which are available for other intangible types of injury. (*Id.*, at pp. 426-427.)

Iowa also recognized a cause of action for loss of parental consortium in 1981. In *Weitl* v. *Moes* (Iowa 1981) 311 N.W.2d 259, after reviewing a statute previously used to authorize a spousal loss of consortium action, the court determined such a cause of action was not properly authorized by that statute and instead was governed by common law. (*Id.*, at p. 265.) The court addressed the various policy factors affecting the recognition of a cause of action for parental consortium and studied the arguments for and against. The Iowa Supreme Court chose not to defer to the Legislature because the action for loss of consortium is a creation of the common law. The court rejected various reasons for denying the claim: (1) addressing multiplicity, the court saw no problem in limiting the cause of action to the two relationships; also, there could be compulsory joinder of the child's

consortium claim with the injured parent's claim; (2) damages were found to be no more uncertain or remote than those damages available to parents in Iowa for the loss of a child's consortium; (3) the child need only show a reasonable certainty of receiving benefits with which the tortfeasor unreasonably interfered; (4) a jury informed that children have their own action would feel no need to compensate the children's losses in the parent's suit—thereby avoiding double recovery. (*Id.*, at pp. 266-268.)

The court noted a growing trend to recognize that minor children have independent identities and possess certain personal rights. (*Weitl* v. *Moes, supra,* 311 N.W.2d at p. 268.) In addition, children should enjoy at least the same protections and opportunities for legal redress that adults enjoy; children suffer most when there is a disruption in the parent-child relationship. A separate award to children would best ensure that the money is used to benefit the child who has suffered the loss. (*Id.*, at p. 269.)

The Iowa Supreme Court held the reasons for recognizing a loss of parental consortium action outweighed any problems the action might create. The court decided, however, that damages should be limited to a child's minority, and urged joinder of the claim with that of the parent. If the child's claim is brought independently, the child has the burden of showing why the action was not joined. (*Weitl* v. *Moes, supra,* 311 N.W.2d at p. 270.)

Two years later in *Audubon-Exira* v. *Ill. Cent. Gulf R. Co.* (Iowa 1983) 335 N.W.2d 148, the Iowa Supreme Court overruled *Weitl* to the extent it created a separate cause of action under the common law. Instead, authorization for the cause of action was by statute[4] and a child could no longer bring an independent claim. The child now had to join the parent's action. The court also struck the limitation on the availability of the cause of action to minors saying the jury should be able to evaluate the extent of loss no matter the age of the child. (*Id.*, at pp. 151-152.)

Wisconsin followed, recognizing a cause of action for loss of parental consortium in *Theama By Bichler* v. *City of Kenosha* (1984) 117 Wis.2d 508 [344 N.W.2d 513]. The Wisconsin Supreme Court noted that the genius of the common law is its ability to adapt itself to the changing needs of society, and resolution of whether a cause of action for loss of parental consortium should be recognized is just another step in the evolution of the courts' views of the changing nature of the family unit. (*Id.*, at p. 514.)

---

[4] Section 613.5 of the Iowa code permits recovery for the value of services decedents might and would have rendered in training and educating their children.

The *Theama* court discussed three reasons in favor of recognizing this cause of action: the importance of the family unit in society, the increasing recognition of a child as a person deserving of constitutional rights and protection by the courts, and the necessity of a parent's love, care, education and protection in contributing to the wholesome and complete development of the child. A combination of these elements, said the Wisconsin court, indicates it would be contrary to justice to deny the gravity of harm suffered by a child who is deprived of his or her parent's society and companionship because of another's negligence. (344 N.W.2d at p. 518.)

The *Theama* court specifically criticized the *Borer* opinion. In rejecting the *Borer* analysis, the court stated that a monetary award may be a poor substitute for the loss of a parent's society and companionship, but it is the only workable way our legal system has found to ease the injury of a tragic loss. It would be "perpetuation of the error" to deny recovery. (*Theama By Bichler* v. *City of Kenosha, supra,* 344 N.W.2d at p. 520.) The court reasoned that by drawing the line at the children, the *Borer* approach ignores the importance of the nuclear family in present day society, not to mention the factor of foreseeability. The *Theama* court noted that the problem of double recovery could be cured by limiting the injured parent's recovery to the child's loss of the parent's ability to support the child, while limiting the child's recovery to the loss of the parent's society and companionship. (*Id.,* at p. 522.)

The court concluded the reasons for allowing the cause of action clearly outweighed the reasons for disallowing it but limited recovery to the child's minority. (344 N.W.2d at p. 522.)

In *Ueland* v. *Reynolds Metals Co.* (1984) 103 Wn.2d 131 [691 P.2d 190], the State of Washington joined these jurisdictions in recognizing the cause of action for loss of parental consortium. The Washington Supreme Court observed the development of the law and was concerned that by deferring to the Legislature it would be abdicating its responsibility to reform the common law to "meet the evolving standards of justice." (*Id.,* at p. 193.)

The *Ueland* court compared a loss of consortium action under a wrongful death statute to one brought when a parent is negligently injured but remains alive. (691 P.2d, at p. 192.) The court did not see a great difference in the child's loss of the parent's love, care, companionship and guidance between the two situations. To permit a spouse to recover and deny recovery to a child suggested to the court the erroneous premise that an adult is more likely to suffer emotional injury than a child.

Not all courts recently addressing the issue decided to recognize such a cause of action. (*Zorzos* v. *Rosen By and Through Rosen* (Fla. 1985) 467

So.2d 305; *De Angelis* v. *Lutheran Medical Center* (1983) 58 N.Y.2d 1047 [462 N.Y.S.2d 626, 449 N.E.2d 406]; *Norwest* v. *Presbyterian Intercommunity Hosp.* (1982) 293 Ore. 543 [652 P.2d 318]; *Morgel* v. *Winger* (N.D. 1980) 290 N.W.2d 266; *Salin* v. *Kloempken* (Minn. 1982) 322 N.W.2d 736.) However, one reason these courts refused to recognize the cause of action was a belief that because debates over social policy were involved, resolution of the issue should be left to the Legislature. (*Norwest* v. *Presbyterian Intercommunity Hosp., supra,* 652 P.2d at p. 324; *Morgel* v. *Winger, supra,* 290 N.W.2d at p. 267.) Other courts concerned with their responsibility to resolve the issue concluded the line had to be drawn somewhere and, as in the *Borer* case in California, the line was drawn at the children. (*Zorzos* v. *Rosen By and Through Rosen, supra,* 467 So.2d 305, at p. 307; *Salin* v. *Kloempken, supra,* 322 N.W.2d at pp. 737-738; *De Angelis* v. *Lutheran Medical Center, supra,* 462 N.Y.S. 2d at pp. 627-628.) The *Borer* decision has been criticized for its analytical approach. (Comment, *Cal. Supreme Court: Limiting the Cause of Action for Loss of Consortium* (1978) 66 Cal.L.Rev. 430.) The court has been accused of abandoning the traditional foreseeability test as a guide in determining the existence of a cause of action in negligence and determining the question by a cost-gains balancing approach, weighing the merits of plaintiffs' claims against the sum of their social costs. This approach was said to be in sharp contrast to the court's prior methodology—that negligence law should derive primarily from a set of general rules of liability, such as foreseeability, proximate cause and the doctrine of consequential injury. (*Id.,* at p. 433.) The *Borer* court has been chastized for failing to explain when reliance on the balancing approach as opposed to general tort principles is proper. (*Id.,* at p. 436.)

The *Borer* case has been described as a departure from cases in which foreseeability was emphasized as the only proper limitation on duty and the potentially burdensome costs on society. (Diamond, *Dillon v. Legg Revisited: Toward a Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries* (1984) 35 Hastings L.J. 477, 497-498.) *Borer* denied a parental consortium cause of action by relying on an interpretation of *Dillon* which requires that a cause of action for purely intangible injury must be denied. The Diamond article noted that under the recent Supreme Court holdings in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] and *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695 [194 Cal.Rptr. 805, 669 P.2d 41], the distinction between physical and nonphysical manifestations of psychological injury no longer exists. Recognizing that the court's commitment to the doctrine of foreseeability is tempered by its desire not to place excessive economic burdens on potential defendants and the insured community, the author suggests approaches that retain foreseeability as a standard for de-

termining liability, but place a reasonable limit on liability and eliminate the danger of multiple recoveries.

*Borer* v. *American Airlines, Inc., supra,* 19 Cal.3d 441 is a Supreme Court case, and we are bound by its decision (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]). However, even though we must affirm the judgment of dismissal, the recent developments in other jurisdictions, plus the many discussions in criticism of the *Borer* result prompt us to point to the inconsistency in the law between husband and wife, and parent and child. As to the Mosk dissent, it is recognized in other jurisdictions and in California, "[its] time has come." (Lewis Carroll, Through the Looking Glass.)

II*

*Negligent Infliction of Emotional Distress.*

. . . . . . . . . . . . . . . . . . . . . .

The judgment of dismissal is affirmed.

Martin, J., concurred.

**BEST, J.**—I concur in the result but, to the extent that the majority opinion may be read as supporting and encouraging judicial creation of causes of action for loss of consortium in the parent-child relationship, I must voice reservations.

"The decision whether to limit liability for loss of consortium by denying a cause of action in the parent-child context, or to permit that action but deny any claim based upon more remote relationships, is thus a question of policy. As explained by Justice Fleming in *Suter* v. *Leonard* (1975) 45 Cal.App.3d 744, 746 [120 Cal.Rptr. 110]: 'Plaintiff's claim, viewed in the abstract and divorced from its surroundings, carries both logical and sympathetic appeal. . . . Certain aspects of spousal relationship are similar to those of the parent-child relationship, and there can be little question of the reality of the loss suffered by a child deprived of the society and care of its parent. Nevertheless our decision must take into account considerations in addition to logical symmetry and sympathetic appeal. . . . [N]ot every loss can be made compensable in money damages, and legal causation must terminate somewhere. In delineating the extent of a tortfeasor's responsibility for damages under the general rule of tort liability (Civ. Code,

---
*See footnote, *ante,* page 975.

§ 1714), the courts must locate the line between liability and nonliability at some point, a decision which is essentially political.'" (*Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441, 446-447 [138 Cal.Rptr. 302, 563 P.2d 858].)

In my view, the courts are ill equipped to decide questions of public policy which are essentially political in nature. Such decisions should be made by the duly elected representatives of the people and, only then, after the opportunity for full legislative investigation and debate. Only through the legislative process can the conflicting public policies and the procedural safeguards appropriate and necessary to protect the interests of *all* of those affected be given due consideration.

Appellants' petition for review by the Supreme Court was denied October 17, 1985. Bird, C. J., Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.