[No. B013765. Second Dist., Div. Seven. Sept. 25, 1986.]

MULLIN LUMBER COMPANY, Cross-complainant and Appellant, v. ARNE CHANDLER, Cross-defendant and Respondent.

COUNSEL

Knapp, Petersen & Clarke, Reginald D. Greene and Gwen Freeman for Cross-complainant and Appellant.

Hagenbaugh & Murphy, John J. Tary, Lance A. LaBelle and Kelvin L. Jenkins for Cross-defendant and Respondent.

OPINION

JOHNSON, J.—The issue in this appeal is whether a settling defendant must prove its own liability to the plaintiff in order to recover from concurrent tortfeasors in an action for equitable indemnity. ■■■ We have concluded such a requirement would undermine the important public policies of maximizing recovery to the injured party, encouraging settlements and apportioning liability according to fault while advancing no legitimate interests of the alleged tortfeasors who did not settle. Therefore we reverse the judgment of nonsuit against Mullin Lumber Company in its action for equitable indemnity from Arne Chandler.

FACTS AND PROCEEDINGS BELOW

Timothy Burton was a carpenter engaged in building a house for respondent Chandler. On the day of his injury, Burton was standing on scaffolding

built from lumber purchased for the construction of the house. One of the scaffolding boards broke and Burton fell. Burton hit his head on a concrete slab and fractured his skull. He suffered extensive, irreversible brain damage which left him confined to a wheelchair. Burton was 23 years of age at the time of the accident.

Burton sued appellant, Mullin Lumber Company, on the theory of strict liability. The complaint alleged Mullin sold Chandler the board that broke and the board was defective. Mullin filed a general denial and pled several affirmative defenses including that Burton's injuries were caused or contributed to by other persons. Mullin also filed a cross-complaint against Chandler, two construction companies, other lumber retailers and the Avison Lumber Company, a manufacturer. The cross-complaint alleged Mullin was not negligent or liable in any manner for Burton's injuries and the cross-defendants were wholly or partially liable. Mullin sought total or partial indemnity from Chandler and the other cross-defendants for any recovery Burton may obtain from Mullin. Chandler filed a general denial to Mullin's cross-complaint.

Mullin settled with Burton and pursued its cause of action for indemnity against Chandler.

In his opening statement to the jury, Mullin's attorney stated he would prove the following. The board that broke was a two by eight and Mullin had supplied 84 percent of the two by eight's used in Chandler's house. Some of the lumber used in Chandler's house came from the Avison lumber mill and Mullin had received a shipment from Avison shortly before the accident. The board in question had been lost soon after the accident.[1] Therefore Mullin could not determine if the board was defective.

As to Chandler's liability, Mullin's attorney told the jury the evidence would show none of the lumber Chandler ordered was of sufficient quality to be used for scaffolding; that Chandler failed to take other precautions to avoid injury to someone using the scaffolding; and that Chandler failed to hire competent subcontractors to supervise the construction.

In conclusion, Mullin's attorney told the jury, "We believe . . . the evidence will show that this particular accident was not the sole result of

---

[1]Following Mullin's opening statement, Chandler revealed he had found the broken board. He produced the board the next day out of the jury's presence. Mullin declined the court's suggestion it move for a mistrial or, at least, inspect the board. Mullin's position was it settled the case on the basis of the board being lost and the probability Mullin had sold the board to Chandler. Mullin contended that for purposes of its claim for equitable indemnity after a settlement based on those factors it was irrelevant whether the board was defective or who supplied it.

negligence on my client's part; that there were other contributing factors. And, basically, that other responsible parties should be responsible for paying their fair share."

Chandler moved for nonsuit after Mullin's opening statement.[2] He contended Mullin could not recover on a claim for equitable indemnity unless it could first prove its *own* negligence. It could not do so here, Chandler argued, because it could not prove by a preponderance of the evidence it supplied the board that broke nor that the board was defective. Even if Mullin could prove it supplied 84 percent of the lumber to the job site such proof would not support a finding Mullin supplied the board in question nor that a defect in the board caused it to break. In other words, to obtain indemnity Mullin first had to prove the plaintiff's case against itself. The trial court accepted this argument and granted the motion for nonsuit.[3]

DISCUSSION

I. THE POLICIES BEHIND TORT LAW WOULD BE UNDERMINED IF SETTLING DEFENDANTS WERE REQUIRED TO PROVE THEIR OWN LIABILITY IN ORDER TO SUCCEED IN AN EQUITABLE INDEMNITY ACTION AGAINST THEIR CO-DEFENDANTS

 California permits an action between concurrent tortfeasors for equitable indemnity on a comparative fault basis. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 591 [146 Cal.Rptr. 182, 578 P.2d 899].) The purpose is to assure liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault. (*Ibid.*) It is also established a settling defendant may assert a claim for equitable indemnity against a concurrent tortfeasor not named by the plaintiff. (*Sears, Roebuck & Co.* v. *International Harvester Co.* (1978) 82 Cal.App.3d 492, 494 [147 Cal.Rptr. 262].)

 Together, these rules promote the public policy considerations underlying multiparty tort litigation: the maximization of recovery to the

---

[2] It was during the argument on the motion Chandler's attorney revealed Chandler had found the broken board. Mullin's attorney was allowed to reopen his case. He explained to the jury he and his client had been proceeding under the belief the board was lost and they believed this to be the case when they settled with Burton.

[3] Because we reject Chandler's premise—a settling defendant must prove its own negligence in order to obtain proportional reimbursement from other tortfeasors—we do not reach the intriguing questions raised by his contention that proof Mullin supplied nearly all the lumber to the job is not sufficient evidence Mullin supplied the particular board at issue. For a discussion of the role of probabilistic analysis in tort liability see Wright, *Causation in Tort Law* (1985) 73 Cal.L.Rev. 1735, 1816-1826; Tribe, *Trial by Mathematics: Precision and Ritual in the Legal Process* (1971) 84 Harv.L.Rev. 1329; Saks & Kidd, *Human Information Processing and Adjudication: Trial by Heuristics* (1980) 15 Law & Society Rev. 123.

injured party; settlement of the injured party's claim; and equitable apportionment of liability among concurrent tortfeasors. (*Sears, Roebuck & Co., supra,* 82 Cal.App.3d at p. 496.) These three policies have dictated the results in previous cases involving indemnity between settling and nonsettling tortfeasors. Appellate courts have consistently adopted procedures which promote maximization of recovery to the injured party, settlement and apportionment of fault. (See, e.g., *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 748 [163 Cal.Rptr. 585, 608 P.2d 673]; *American Bankers Ins. Co.* v. *Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 736 [159 Cal.Rptr. 70]; *Bolamperti* v. *Larco Manufacturing* (1985) 164 Cal.App.3d 249, 255 [210 Cal.Rptr. 155].) We have rejected procedures which would undermine these policies. (See, e.g., *Teachers Insurance Co.* v. *Smith* (1982) 128 Cal.App.3d 862, 865 [180 Cal.Rptr. 701]; *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 283 [188 Cal.Rptr. 580].) The case at bar is no different. The strong policies in favor of maximizing recovery to the injured party, settling cases and apportioning fault would be seriously impaired if we required a settling defendant to prove its own fault before seeking indemnity against others it alleges contributed to the plaintiff's injury. ■ · Furthermore, a judicial determination of fault is not necessary to protect the other tortfeasors from the rare case of collusion or bad faith.

■ Every effort should be made to foster fair resolution of disputes and to avoid needless, time-consuming litigation. (*American Bankers Ins. Co., supra,* 97 Cal.App.3d at p. 736.) ■ If a defendant concludes, for any of a variety of legitimate reasons, it is in its best interests to settle with the injured party, it should be encouraged to do so. If a settling defendant must nevertheless prove its own fault to a judge or jury in order to obtain indemnity from other tortfeasors it has precious little incentive to settle. From a defendant's point of view, settlement *avoids* a finding of fault. It also avoids the publicity, costs and inconvenience of a trial. Requiring the defendant to prove its own fault would deny it these benefits.[4]

■ Another advantage of a good faith settlement is it puts a lid on the amount of damages the settling defendant must pay. (Code Civ. Proc., § 877.6, subd. (c).) This inducement would be seriously undermined in a case such as the one at bar where there is a catastrophic injury and pressing need for money but the would-be settlor's fault is doubtful. If the defendant declines settlement and the plaintiff cannot establish fault, the defendant pays nothing. If the plaintiff does prove fault defendant pays damages but

---

[4]Although not crucial to our decision, we have also considered the disruptive effect such a rule may have on the attorney-client relationship. Do we want a rule that defense counsel in a medical malpractice case must first prove his own client butchered the plaintiff before seeking indemnity from the negligent anesthesiologist?

is entitled to seek an equitable apportionment with other tortfeasors who contributed to the plaintiff's injury. However, if the defendant settles and then is unable to prove its own fault it must pay the settlement with no contribution from others who may have been more at fault. Given these alternatives, the would-be settlor may well elect not to settle and let the plaintiff prove fault if he is able. Or, if the defendant does settle, it settles for much less than it would if the opportunity for eventual equitable apportionment of damages existed. (See *Sears, Roebuck & Co., supra,* 82 Cal.App.3d at p. 492.)

## II. A SETTLING DEFENDANT'S FAILURE TO PROVE ITS OWN LIABILITY DOES NOT MAKE IT A VOLUNTEER

We find no merit in Chandler's contention Mullin must prove its own liability or be treated as a mere volunteer not entitled to indemnity.

The fact Mullin denied liability to Burton in its answer to Burton's complaint is irrelevant to Mullin's claim for indemnity against an alleged joint tortfeasor. In *Aetna Life & Cas. Co. v. Ford Motor Co.* (1975) 50 Cal.App.3d 49, 53 [122 Cal.Rptr. 852], the court refused to construe Aetna's denial of liability to the injured party so as "to place Aetna in a pleading box from which it could never escape . . . ." (See also *Teachers Insurance Co. v. Smith, supra,* 128 Cal.App.3d at p. 864.)

A volunteer settlor has been defined as a mere stranger or intermeddler who has no interest to protect and no moral or legal obligation to pay. (*State Farm Fire & Casualty Co. v. Cooperative of American Physicians, Inc.* (1984) 163 Cal.App.3d 199, 203 [209 Cal.Rptr. 251].) Mullin was neither a stranger nor intermeddler in this action. It was a named and served defendant. As such it clearly had an interest to protect. In his brief, Chandler quotes from *Aetna Life & Cas. Co., supra,* asserting "Equitable indemnity . . . is not available to a volunteer. It extends to those who pay in performance of a legal duty in order to protect their own rights or interests." (50 Cal.App.3d at p. 52.) He ignores the court's next sentence "However, one acting in good faith in making payment under a reasonable belief that it is necessary to his protection is entitled to indemnity . . . even though it develops that he in fact had no interest to protect." (*Id.,* at pp. 52-53.) The court, in *Aetna,* went on to say a settling party is not a volunteer if it settled in the face of "actual, potential [or] reasonably apparent liability." (50 Cal.App.3d at p. 54.)

## III. SETTLING DEFENDANTS NEED ONLY ESTABLISH THEY REASONABLY BELIEVED THEMSELVES TO BE POTENTIALLY LIABLE IN ORDER TO BE ENTITLED TO EQUITABLE INDEMNITY FROM CO-DEFENDANTS

We hold in an action for equitable indemnity based on comparative fault the settling defendant need only prove the settlement was based on a

reasonable estimate of its liability at the time of the settlement. We applied this test in *Barth-Wittmore Ins.* v. *H. R. Murphy Enterprises, Inc.* (1985) 169 Cal.App.3d 124 [214 Cal.Rptr. 894] (Lillie, P. J.) in reviewing a trial court's finding of a good faith settlement under Code of Civil Procedure section 877.6. The test is just as appropriate here. In *Barth-Wittmore,* as in the case at bar, the party seeking to avoid indemnity claimed the settlor had paid too much because, as claimed here, the settling defendant was not liable. (*Id.,* at pp. 131-132.) We held it was not necessary the trial court find the settling defendant liable in order to determine the settlement to be in good faith. The court need only find the defendant's "estimate of potential liability was reasonable at the time of the settlement." (*Id.,* at p. 133.) This requirement is satisfied if the injured party could state a recognized cause of action against the settling defendant and the settlor faced actual, potential or reasonably apparent liability.

Under our holding, a settling defendant could not bind others to contribute to payment for an injury the law does not recognize such as loss of parental consortium. (See *Nix* v. *Preformed Line Products Co.* (1985) 170 Cal.App.3d 975, 986 [216 Cal.Rptr. 581].) The settling defendant would still have to prove fault on the part of the nonsettling defendant contributed to the plaintiff's injuries. (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d at p. 607.) Our holding also recognizes settlements are made on the basis of information available at the time and must be evaluated in that light. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698 P.2d 159].) The situation can change between the time of the settlement and the time of the trial on indemnity, as the case at bar demonstrates. Suppose, in the case before us, the missing board that turned up on the day of trial had had the name of another lumber company clearly stamped on its end. It would make no sense to say the innocent lumber company who settled must bear the burden rightfully belonging to a nonsettling party. Such a result is just the opposite of the result that ought to be reached under a system in which "'liability for damage [is] borne by those whose negligence caused it in direct proportion to their respective fault.'" (*American Motorcycle Assn., supra,* 20 Cal.3d at p. 591.)

 We perceive no prejudice to the nonsettling party in our ruling. Unlike cases involving contractual indemnity, where proof of the settling defendant's fault is necessary to trigger the obligation of a third person to indemnify, in cases involving equitable indemnity based on comparative fault the obligation to indemnify is triggered by proof the party from whom indemnity is sought was itself at fault in causing the injury. This burden of proof is on the party seeking indemnity. (*American Motorcycle Assn., supra,* 20 Cal.3d at p. 607.) Furthermore, the party seeking indemnity must prove

payment of the settlement amount (*E.L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505]), and that the settlement amount was reasonable. (Cf. *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.) These requirements are sufficient to protect nonsettling defendants from collusion or fraud on the part of settling defendants.

### DISPOSITION

The judgment is reversed. Appellant to receive its costs on appeal.

Lillie, P. J., and Thompson, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 30, 1986.