(No. 5096.   May 15, 1929.)

A. L. HOUGHTELIN et al., Appellants, v. E. J. DIEHL and THE HAZELTON STATE BANK, a Corporation, Respondents.

[277 Pac. 699.]

E. M. Wolfe and A. H. Nielson, for Appellants,

638

Bissell & Bird, for Respondents, Hazelton State Bank.

ADAIR, District Judge.—Defendant Diehl borrowed from the Hazelton State Bank $1,500, securing the loan by chattel mortgage. He later secured other additional loans, which were unsecured, aggregating a large sum. Substantial amounts were also advanced him by appellants, upon whose farm he was a tenant. The respondent bank instituted suit upon these unsecured debts, attaching the same property covered by its chattel mortgage. On the same day Diehl, having enlisted in the army and when about to entrain for service in the World War, delivered to appellants an instrument purporting to be a bill of sale of his property, describing that covered by the chattel mortgage and levied upon under the writ of attachment. On the following day the bank commenced to foreclose its mortgage. A few days later appellants paid the sheriff the amount due the bank under its chattel mortgage, including accrued costs of foreclosure, but did not pay or tender payment of the unsecured debt to the bank. Appellants then started a claim and delivery action against the sheriff, claiming ownership and right to the immediate possession of the personal property held by such officer under the attachment process. The judgment later entered in this suit was that the sheriff

was entitled to retain "possession of all the property described." Judgment was duly entered in the attachment suit in favor of the respondent bank and against Diehl in the sum of $975.70, the amount of the unsecured debt.

Having failed in the claim and delivery action appellants brought the present suit, alleging that as creditors of Diehl and to protect their interest in the property they paid the chattel mortgage debt and thereby became subrogated to the rights of the respondent bank under its chattel mortgage, and praying for the foreclosure of all interest, lien and equity of redemption in and to the property covered thereby. Diehl, having been adjudicated a bankrupt, defaulted, and the cause was tried between appellants and the respondent bank. This appeal is from a judgment entered in favor of the bank.

The trial court found, upon competent though conflicting evidence, that when the instrument designated as a bill of sale was delivered to Houghtelin by Diehl it was for the purpose and with the understanding that Houghtelin was to manage, control and dispose of the chattels therein described, which were the mortgaged and attached property, to the best advantage, and that he would apply the proceeds received from the sale first to the payment of the debts due from Diehl to the bank, including both the secured and unsecured debts, and that the residue should be disposed of in a specified manner.

Under our view of the case the only matter for determination is the question of subrogation, which disposes of all the other controverted issues presented here.

Subrogation, in its broadest sense, is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities. The doctrine is derived from the civil law from which it has been adopted by courts of equity. It is considered a creature of equity and is so administered as to secure real and essential justice without regard to form, and it will not be allowed where it would work an injustice to others, as where it would disturb the priorities of liens or defeat any rights

of others. Its principle is often extended to those who, because of their interest in the property on which debts of others are a charge, are entitled to pay such debts and be substituted to the place of the original creditor. Generally speaking it is only in cases where one advances money to pay the debt of another to protect his own rights that a court of equity substitutes him in place of the creditor as a matter of course, without any express agreement to that effect. The doctrine of subrogation is not administered as a legal right but the principle is applied to subserve the ends of justice and to do equity. It does not rest on contract and no general rule can be laid down which will afford a test in all cases for its application, and whether the doctrine is applicable to any particular case depends upon the peculiar facts and circumstances of such case.

The general rule is that a person cannot be subrogated to the rights or securities of a creditor until the claim of the creditor against the debtor has been paid in full. (*Barton v. Matthews*, 141 Ark. 262, 9 A. L. R. 1594, note, p. 1596, 216 S. W. 693; 25 R. C. L. 1318; *Henshaw v. Homeland Co.*, 177 Cal. 381, 170 Pac. 826; *Finnell v. Jas. H. Goodman & Co. Bank*, 156 Cal. 18, 103 Pac. 483; *Askey v. Stroud* (Tex. Civ. App.), 240 S. W. 339; *Blitz v. Metzger*, 119 Kan. 760, 241 Pac. 259; *Morrison v. Citizens' Nat. Bank*, 65 N. H. 253, 23 Am. St. 39, 20 Atl. 300, 9 L. R. A. 282; *Richeson v. National Bank*, 96 Ark. 594, 132 S. W. 913; *United States v. National Surety Co.*, 254 U. S. 73, 41 Sup. Ct. 29, 65 L. ed. 143; *Knaffl v. Knoxville Banking & Trust Co.*, 133 Tenn. 655, Ann. Cas. 1917C, 1181, 182 S. W. 232; *National Surety Co. v. Salt Lake County*, 5 Fed. (2d) 34.)

The uniform rule deducible from the authorities is that subrogation cannot be enforced until the whole debt is paid; and until the creditor be wholly satisfied there can be no interference with his rights or his securities which might, even by bare possibility, prejudice or embarrass him in the collection of the residue of his claim.

In *Blitz v. Metzger, supra,* the Kansas court said, in effect, that when the debtor had other obligations to the creditor for which the creditor has the securities in question, the right

of subrogation does not accrue until (1) full payment of the debt is made, and (2) the principal debtor is no longer indebted to the creditor upon such securities. In *Morrison v. Citizens' Nat. Bank, supra,* a case in many respects analogous to the one here, the reasoning is particularly applicable and persuasive. In that case the creditor brought suit on a note indorsed by a surety, and afterward brought another suit on a note signed by the same debtor but not indorsed. In each of the actions the same property was attached, and judgment was obtained in each case. The surety, who had indorsed the one note, paid the judgment on which he was liable, not knowing of the second attachment, and he thereupon claimed the right to be subrogated to the creditor's rights in the attached property, and claimed a lien thereon prior to the creditor's second attachment lien. He was denied this relief, the court saying "that an assignment of that interest would not be equitable until he paid the debts for the payment of which the bank had obtained security by its attachments."

In the instant case appellants became the owners, or at least entitled to possession, of the property through the bill of sale, subject to the two prior liens of the bank thereon. It is conceded that the chattel mortgage lien was valid and prior in time to any rights acquired by appellants, and it was adjudicated in the claim and delivery action that the attachment lien was superior to appellants' title. Appellants stand, by virtue of the bill of sale, in the shoes of Diehl, owning or possessing the property subject to these two valid existing prior liens in favor of respondent. In addition to this appellants took this assignment of Diehl's property under the express agreement with Diehl that they would pay in full the secured and unsecured claims due from Diehl to the bank. In the face of this contract and the adjudication that their title is inferior to the rights of the bank under its attachment respondents paid only a portion of the entire debt due the bank, and now ask a court of equity to subrogate them to all rights under the chattel mortgage. The property of Diehl thus transferred to appellants was the

primary fund for the payment of all debts due the respondent from Diehl. The mortgage and attachment liens, both held by the same creditor, with no intervening rights in another, were as to each other of equal equity and importance. There was no equity in favor of the mortgage lien in advance of the rights of the bank under its attachment lien. The respondent might have, had it so elected, proceeded to exhaust the property under its attachment to satisfy its unsecured debt. It was entitled to retain both liens, and the control of the property thereunder, for the satisfaction of either or both debts. Appellants cannot interfere with or delay the respondent bank in pursuing every remedy open to it for the collection of its entire debt. Respondent cannot be compelled to cede or detract from its securities until fully paid. A *pro tanto* payment and subrogation would have the effect of dividing the securities between the respondent and the appellants.

The fact that respondents erroneously believed that their rights were paramount to those acquired by the bank under its attachment and because thereof paid off the secured debt does not create any equity in their favor. To subrogate them to the security of the chattel mortgage might possibly defeat the right of the respondent bank to collect its unsecured debt. It would not be consonant with equity to permit appellants to violate their contract with Diehl, who manifestly desired his debt paid to the bank in full. This partial payment was not in accord with the agreement under which they obtained their rights in the property, and if they prevail here the result might be to defeat or hamper the collection of the balance of the debt, and thus frustrate the purpose of Diehl and entirely wipe out and destroy the very consideration for which the bill of sale was delivered to them.

The right of subrogation is rather against the debtor than against the creditor and subrogation will be denied one who does not pay the entire debt. Under the facts in the instant case the trial court properly denied the right of subrogation to appellants.

A motion to dismiss this appeal, upon the ground that notice of appeal was not served on the defendant Diehl,

was interposed and argued. Diehl did not appear in this action and his default was entered. However, it is apparent from the record that during the trial counsel for the respondent bank made the following motion:

"Comes now the defendant E. J. Diehl, after the plaintiff has introduced in evidence a record of his bankruptcy proceedings, and moves the court to dismiss the case as to Diehl . . . . "

In view of this statement appellants were justified in assuming that Diehl was represented by the counsel then representing the bank, and proceeded properly in serving notice of appeal upon them. The motion to dismiss the appeal is therefore denied.

Respondent likewise moved to strike appellants' brief and affirm the judgment because the rules of this court relative to separately specifying and stating the errors relied upon, the giving of points and authorities and the designation by folio of the portions of the transcript referred to were not complied with. At the time of oral argument permission was granted to appellants' counsel to file amended specifications of error and the amendment thereafter presented pursuant thereto, as to one of the errors assigned, cured the defects complained of, and for that reason the motion to strike is also denied.

Judgment affirmed and costs awarded the respondent bank.

Budge, C. J., and Baker, D. J., concur.

GIVENS, J., Dissenting.—The majority opinion entirely overlooks the agreement made between Houghtelin and Diehl, and though the bank was not a party to it, it was acquiesced in by the bank and the bank now relies on it.

This agreement was found by the court to be as follows:

" . . . . that said instrument (bill of sale from Diehl to Houghtelin) was executed and delivered by said Diehl for the purpose and with the understanding that said A. L. Houghtelin would manage, control and dispose of the property therein referred to to the best advantage, and would apply the proceeds received from the sale thereof, including

Diehl's share of the crops on the ranch in question, first, to the payment of the debts due by said Diehl to the Hazleton State Bank, including both the secured and unsecured debts described in paragraphs 3 and 4 thereof, and secondly, to the payment of the debt then due by Diehl to said Houghtelin Sheep Company, and thirdly, any amount remaining to be paid to Diehl, or deposited to his credit.''

By this agreement it is apparent that before Houghtelin could take the property and dispose of it and pay the bank its mortgage he was to have possession of the property, and by the agreement was to manage and dispose of it. Conceding for the purposes of argument that the attachment was superior to the bill of sale, Houghtelin in paying the mortgage was seeking to carry out the agreement when stopped by the bank.

Houghtelin having paid the mortgage is clearly entitled to be subrogated to the amount paid by him on the mortgage. He owed no debt to the bank.

The majority opinion announces the doctrine that before subrogation can be claimed, the creditor must be paid in full. Houghtelin was never a debtor of the bank. He agreed to take the property and dispose of it and pay Diehl's debt. He advanced his own money in furtherance of the contract and now the bank keeps both the property and the money. This is clearly inequitable, unjust and contrary to one of the fundamental principles of subrogation that when a person pays an obligation in an attempt to protect what he considers his property, he is entitled to subrogation. (2 Jones on Mortgages, 8th ed., secs. 1111, 1122; 5 Pomeroy's Equitable Remedies, 2d ed., secs. 2343, 2346; 2 Story's Equitable Jurisprudence, 14th ed., secs. 706, 720; Jones on Chattel Mortgages, 5th ed., sec. 659; see *Platte Valley Cattle Co. v. Bosserman-Gates etc. Co.,* 202 Fed. 692, 121 C. C. A. 102, 45 L. R. A., N. S., 1137.)

Recognizing the superiority of the chattel mortgage, it was incumbent on appellant to protect his right of possession, since the bank had commenced foreclosure of the mortgage. In view of that fact, the language in *Boise De-*

*velopment Co. v. Boise,* 30 Ida. 675, at 684, 167 Pac. 1032, at 1033, is pertinent, apt and, I believe, squarely in point:

"But it is essential in order to apply the doctrine of election of remedies that the party must actually have had at his command more than one remedy. As was said by this court in an early case, 'He must not only think he has them, but must in fact have them.' (*Elliott v. Collins,* 6 Ida. 266, 55 Pac. 301.) . . . . Applying the rule to the facts in this case, it is apparent that the plea of election of remedies must fail. Respondent sued for the breach of what it believed to be a contract, when as a matter of fact no such contract was in existence."

Thus in the case at bar the appellant in the replevin action thought he had a bill of sale but the court found that it was not a, bill of sale.

This in no way injures respondent, since respondent's attachment claim was clearly secondary to the chattel mortgage. Appellant, by paying off the chattel mortgage, merely stepped into respondent's shoes.

Houghtelin did not get any advantage by claiming subrogation. All the bank was ever entitled to under its chattel mortgage or the attachment was the property. By seeking subrogation, Houghtelin is not attempting to have his claim against Diehl paid but is merely seeking reimbursement for what he paid in protecting Diehl, and in complying with the terms of the contract as found by the trial court.

The chattel mortgage and the attachment were entirely distinct proceedings and had no connection one with the other, and such was found by the trial court and it clearly was the intention of the parties to so consider them.

The majority opinion says appellant could not interfere with the bank's pursuing every remedy it had and indicates that the payment of the mortgage was only a partial payment. It was an entire payment of the mortgage and the only payment for which Houghtelin seeks subrogation. There is no question but that the attachment was secondary to the chattel mortgage.

Herein the appellant is seeking to recover only that which he has paid, attempting to protect that which he thought

he had a right to and is thus authorized to claim subrogation. (*Whitley v. Spokane Ry. Co.*, 23 Ida. 642, 132 Pac. 121; *First Nat. Bank v. Regents*, 26 Ida. 15, 140 Pac. 771; *Witthoft v. Commercial Development etc. Co.*, 46 Ida. 313, 268 Pac. 31.)

The other points urged in the appellant's brief, by reason of the result of the majority opinion, were not mentioned in the majority opinion. Without discussing them, I think they should be decided in favor of appellant and that the judgment should be reversed and remanded, with instructions to permit appellant to foreclose on the mortgage for the amount he paid on its foreclosure.

I am authorized to say that Wm. E. Lee, J., concurs with me in this dissent.