491 P.2d 27

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, a corporation, Appellant,

v.

ROBERT E. McKEE GENERAL CONTRACTORS, INC., a corporation, Appellee.

No. 2 CA–CIV 959.

Court of Appeals of Arizona, Division 2.

Dec. 9, 1971.

**78**

Browder, Gillenwater & Daughton by Robert W. Browder, Phoenix, for appellant.

Mesch, Marquez & Rothschild by Tom R. Clark, Tucson, for appellee.

HOWARD, Judge.

Appellant insured, the Howard P. Foley Company, filed an amended third-party complaint against the appellee and others [1] (the parties hereinafter shall be referred to as Employers, Foley, and McKee). Foley sought to recover $50,000 damages for an alleged breach of contract to procure liability insurance. Employers was substituted for Foley as the real party in interest and prosecuted the action which terminated in the judgment in favor of McKee upon motion for summary judgment.

The record discloses the following undisputed facts. In May 1959, McKee as general contractor entered into a written contract with St. Mary's Hospital of Tucson as owner for the construction of a hospital. Shortly thereafter, McKee entered into a subcontract agreement with Foley providing for Foley's performance of the electrical construction work required by the contract. Pursuant to this subcontract, installation of certain lighting fixtures was accomplished by Foley. One of the fixtures installed by a Foley employee was not grounded, however, contrary to the requirements of a City of Tucson ordinance and in 1966, one Richard Morgan was killed by electrocution when he came into contact with the ungrounded fixture. A wrongful death action was filed by his surviving spouse against Foley, McKee and others. Employers, Foley's liability insurer, undertook Foley's defense and after investigation concluded that the action could not successfully be defended because of the non-compliance with the city ordinance as to grounding. After notice to McKee that partial reimbursement would be sought from him, Employers settled the claim against Foley for $190,000. (The entire sum was paid by Employers.)

The breach of contract claim against McKee was predicated on the following provisions of McKee's construction contract with St. Mary's:

"21. Contractor's and Subcontractor's Insurance.—(a) The Contractor shall not commence work under this contract until he has obtained all the insurance required hereunder and such insurance has been approved by the Owner, nor shall the Contractor allow any subcontractor to commence work on his subcontract until all similar insurance required of the subcontractor has

---

1. Three claims were set forth but only one asserted a claim against McKee. A summary judgment in favor of the other two parties was recently affirmed by this court. See Employers Mutual Liability Insurance Co. of Wisconsin v. Advance Transformer Co., 15 Ariz.App. 1, 485 P.2d 591 (1971).

been so obtained and approved. Approval of the insurance by the Owner shall not relieve or decrease the liability of the Contractor hereunder.

(b) *Compensation and Employer's Liability Insurance.*—The Contractor shall take out and maintain during the life of this contract the statutory Workmen's Compensation and Employer's Liability Insurance for all of the employees to be engaged in work on the project under this contract and, in case any such work is sublet, the Contractor shall require the subcontractor similarly to provide Workmen's Compensation and Employer's Liability Insurance for all of the latter's employees to be engaged in such work.

(c) *Bodily Injury Liability and Property Damage Liability Insurance.*—The contractor shall take out and maintain during the life of this contract such Bodily Injury Liability and Property Damage Liability Insurance and Automobile Bodily Injury Liability and Property Damage Liability Insurance *as shall protect him and any subcontractor performing work covered by this contract* from claims for damages for personal injury, including accidental death, as well as from claims for property damage, which may arise from operations under this contract, whether such operations be by himself or by any subcontractor or by anyone directly or indirectly employed by either of them, and the amounts of such insurance shall not be less than—

(1) Bodily Injury Liability Insurance, in an amount not less than Fifty Thousand Dollars ($50,000.00) for injuries, including wrongful death to any one person, and subject to the same limit for each person in an amount not less than One Hundred Thousand Dollars ($100,000.00) on account of one accident.

(2) Property Damage Insurance in an amount not less than Ten Thousand Dollars ($10,000.00) for damages on account of any one accident, and in an amount not less than Twenty-Five Thousand Dollars ($25,000.00) for damages on account of all accidents.

(d) *Owner's Protective Liability Insurance.*—The Contractor shall take out and furnish to the Owner and maintain during the life of this contract complete Owner's Protective Liability Insurance in amounts as specified in paragraph 21(c), above, for Bodily Injury Liability Insurance and for Property Damage Liability Insurance." (Emphasis supplied)

McKee did not obtain liability insurance for Foley and took the position that it was not required to do so by virtue of the following provisions of the subcontract:

"Insofar as the provisions of the General Contract do not conflict with specific provisions herein contained, they and each of them are hereby incorporated into this Subcontract as fully as if completely re-written herein, except that all of said . . . provisions are amended as follows: Wherever the 'Owner' is referred to therein, the word 'Contractor' shall be substituted therefor and wherever the 'Contractor' is referred to therein the word 'Sub-Contractor' shall be substituted therefor. The Sub-Contractor agrees not to violate any terms, covenant or conditions of said General Contract.

\*     \*     \*     \*     \*     \*

12. The Sub-Contractor shall carry and pay for (1) workmen's compensation insurance and (2) public liability insurance consisting of both bodily injury and property damage coverage and including contractual liability coverage. All of said policies shall be in a sum and with limits and in companies acceptable to Contractor. The Sub-Contractor shall furnish Contractor with copies of said policies or with certificates showing names of the carrier, numbers of the policies and expiration dates, upon request. Sub-Contractor hereby agrees to defend at its own cost and to indemnify

and hold harmless the Contractor, if agents and employees, from any and all liability, damages, losses, claims and expenses, however caused, resulting directly or indirectly from or connected with the performance of this agreement, irrespective of whether such liability, damages, losses, claims and/or expenses were actually or allegedly caused wholly or in part through the negligence of Contractor or any of its agents, employees or other Sub-Contractors."

Foley was neither a party nor privy to the construction contract between McKee and the owner. Employers' position, however, was that Foley was a third-party beneficiary of the contract and therefore when Employers settled the wrongful death claim, it was subrogated to Foley's rights under the contract.

■ It is well settled in this jurisdiction that in order to recover under the third-party beneficiary doctrine, the contract relied upon by the third party must reflect that the parties thereto intended to recognize him as the *primary* party in interest. Basurto v. Utah Construction & Mining Co., 15 Ariz.App. 35, 485 P.2d 859 (1971) and cases cited therein. We need not however resolve the question of whether Foley enjoyed the status of third-party beneficiary since application of subrogation principles is dispositive of this appeal.

■ Subrogation is the substitution of one person in place of another with reference to a lawful claim, demand, or right, so that he who is substituted succeeds to the rights of such other in rela-

tion to a debt or claim. D. W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P.2d 85 (1966); Mosher v. Conway, 45 Ariz. 463, 46 P.2d 110 (1935); Harleysville Mutual Ins. Co. v. Lea, 2 Ariz.App. 538, 410 P.2d 495 (1966). A subrogee, however, occupies the position of the party for whom he is substituted and succeeds to the same but no greater rights. In other words, he cannot acquire a right which the subrogor did not have. United States v. Munsey Trust Co., 332 U.S. 234, 67 S. Ct. 1599, 91 L.Ed. 2022 (1947); Employers Casualty Co. v. Wainwright, 28 Colo.App. 292, 473 P.2d 181 (1970); 44 Am.Jur.2d Insurance § 1821; 50 Am.Jur. Subrogation § 110. The pivotal question therefore is—did Foley have any right to enforce McKee's agreement to procure insurance? The McKee-Foley contract requires us to answer in the negative. Paragraph 12, supra, requires Foley to procure insurance and releases McKee from all liability, damages, losses and claims connected with the performance of the contract. Since Foley agreed to bear the onus of any loss, this was tantamount to a rejection of any rights it may have had under McKee's contract with the property owner. Under these circumstances, the disclaimer precluded enforcement of any rights. Stanley v. Robert S. Odell & Co., 97 Cal.App.2d 521, 218 P.2d 162 (1950); Restatement, Contracts § 137. Foley had no claim against McKee and, as a consequence thereof, neither did Employers.

Affirmed.[2]

KRUCKER, C. J., and HATHAWAY, J., concur.

2. The appellee has requested this court allow attorney fees for this appeal. We deny the request as the posture of this suit brings it within the rule that such fees are not recoverable in the absence of statute or agreement. Whitestone v. Town of South Tucson, 2 Ariz.App. 494, 410 P.2d 116 (1966).