766 P.2d 751

William P. CHENERY, Plaintiff,

v.

AGRI–LINES CORPORATION, a Nevada corporation, Defendant.

David C. SPENCER and Lois N. Spencer, husband and wife, Plaintiffs,

v.

AGRI–LINES CORPORATION, a corporation, Defendant.

AGRI–LINES CORPORATION, a corporation, Third Party Plaintiff–Respondent–Cross Appellant,

v.

LAYNE PUMP, INC., and its successor in interest, the Singer Company, a corporation, Third Party Defendants–Appellants–Cross Respondents.

No. 16517.

Supreme Court of Idaho.

Oct. 6, 1988.

Rehearing Denied Dec. 14, 1988.

Quane, Smith, Howard & Hull, Boise, for appellants. David E. Day argued.

Clemons, Cosho & Humphrey, P.A., Boise, for respondent. Richard H. Greener argued.

SHEPARD, Chief Justice.

This is an appeal from a judgment and orders denying a motion for a new trial, and a cross-appeal from orders denying pre-judgment interest, costs, and attorney fees. We affirm.

In brief, Layne Pump manufactured, sold and installed a deep-well turbine irrigation pump on property owned by Chenery and leased by the Spencers. Six years later Agri–Lines was employed by the Spencers to repair the pump. In the repair process a portion of the pump fractured, causing much of the mechanism to drop to the bottom of the well.

Chenery and the Spencers brought action against Agri–Lines seeking damages for crop losses. Agri–Lines brought a third-party complaint against Layne. Agri–Lines settled with Chenery and the Spencers, and judgments were entered in favor of the Spencers and Chenery for the amounts of $110,000.00 and $67,000.00 respectively.

Following the settlement and entry of judgment in favor of Chenery and the Spencers against Agri–Lines, the district court awarded attorney fees to the Spencers and Chenery. That award of attorney fees was appealed, (*Chenery v. Agri–Lines Corp.*, 106 Idaho 687, 682 P.2d 640 (1984)) and reversed.

Thereafter, a jury trial was held on the third-party action of Agri–Lines against Layne which was premised on theories of indemnity, contribution, and subrogation. The jury found that 100 percent of the cause of the accident was attributable to Layne, found in favor of Agri–Lines on all its theories, and based thereon judgment was entered against Layne in the amount of $157,000.00.

I.

The focus of the controversy between Agri–Lines and Layne is the alleged defectiveness of the pump discharge head. In

the manufacturing process trunions, or "lifting ears" were cast into the discharge head, to which cables could be attached in order to lift the pump. The discharge head was also equipped with a steel lifting plate located beneath the discharge head, which plate contained eyes through which cables could be passed in order to lift the pump upwards. Agri–Lines contended that the "lifting ears" cast into the pump's discharge head were appropriately attached to cables and used to lift the pump. While Agri–Lines was so attempting to raise the pump, one of the lifting ears fractured from the discharge head, causing the entire column of pipe, shaft, tube, and bowl assembly to fall to the bottom of the well. Agri–Lines did not have the necessary equipment to retrieve the mechanism from the well. Layne contends that the lifting cables should have been attached to the lifting plate and Agri–Lines improperly attempted to lift the pump by attaching the lifting cables to the lifting ears alone.

On the principal appeal Layne asserts that the trial court erred in certain instructions to the jury, that the trial court erred in ruling on certain evidentiary matters, and that the trial court erred in refusing to grant a motion for a new trial.

■ As to the asserted errors in instructions, it is argued that instructions relating to Agri–Lines' right to indemnity and/or its right to contribution, were erroneous. The trial court instructed the jury that "Agri–Lines seeks reimbursement from Layne Pump, Inc." Reimbursement, or the right of one party who has satisfied a claim to seek repayment from another party, can be pursued on any one of three interrelated common law principles: indemnity, contribution, or subrogation. All those principles are based on the concept that a party should be held responsible for his own wrongs, and if another is compelled to pay damages caused by the wrongdoer, that party is entitled to recover from the wrongdoer.

■ "The terms 'indemnity' and 'contribution' are often used interchangeably. However, perhaps it is more appropriate to use the term 'indemnity' in referring to a claim for 100 percent reimbursement and the term 'contribution' in referring to a claim for partial reimbursement." *Stephenson v. McClure*, 606 S.W.2d 208, 210–211 (Mo.App.1980). Contribution means a sharing of loss, while indemnity means a shifting of the entire loss. *McCleskey v. Noble Corporation*, 2 Kan.App.2d 240, 577 P.2d 830 (1978). Quite simply, contribution is a form of indemnity. *Fontenot v. Roach*, 120 F.Supp. 788 (D.C.Tenn.1954).

The overlap of the equitable principles of indemnity and subrogation was stated in *May Trucking Company v. International Harvester Company*, 97 Idaho 319, 321, 543 P.2d 1159, 1161 (1975):

> Both indemnity and subrogation are equitable principles based on the general theory that one compelled to pay damages caused by another should be able to seek recovery from that party. The doctrines overlap in some cases and certainly the possessor of the right to indemnity may also possess the right of subrogation.

■ Three *prima facie* elements of indemnity were outlined in *Williams v. Johnston*, 92 Idaho 292, 442 P.2d 178 (1968), *i.e.*, (1) an indemnity relationship, (2) actual liability of an indemnitee to the third party, and (3) a reasonable settlement amount. Layne concedes that a reasonable settlement amount was established, but argues that the other two *prima facie* elements were not established by Agri–Lines. We disagree.

■ Here, Agri–Lines does not assert an indemnity relation arising in contract, but rather relies on common law principles of indemnity. Agri–Lines here established that Layne was the party responsible for the injuries, and hence has established its right to indemnity. *See Kvarfordt v. Yokahama Tire Corp.*, No. 82–4227, Memorandum Decision (D.C.Idaho, Oct. 16, 1985).

Layne also asserts that since the jury in the present action found no negligence on the part of Agri–Lines, the second element, liability of Agri–Lines to Chenery and the Spencers, was not established, and that Agri–Lines was therefore a volunteer in

making the settlement payments. We disagree. One acting in good faith making a settlement under a reasonable belief that it is necessary to his protection, will not be denied equitable indemnity. To so hold would undermine the policies behind equitable indemnity. As stated in *Mullin Lumber Co. v. Chandler*, 185 Cal.App.3d 1127, 230 Cal.Rptr. 122, 124–25 (1986), *rev. denied*, Dec. 20, 1986:

> The strong policies in favor of maximizing recovery to the injured party, settling cases and apportioning fault would be seriously imparied if we required a settling defendant to prove its own fault before seeking indemnity against others it alleges contributed to the plaintiff's injury. Furthermore, a judicial determination of fault is not necessary to protect the other tortfeasors from the rare case of collusion and bad faith....

> If a settling defendant must nevertheless prove its own fault to a judge or jury in order to obtain an indemnity from other tortfeasors it has precious little incentive to settle.

Layne urges the abrogation of the concept of equitable indemnity, in light of Idaho's adoption of comparative negligence embodied in I.C. § 6–801. We decline. Equitable indemnity is founded on common law notions of justice, and unless explicit statutory language abrogates such common law concepts, they remain viable. We see no language in I.C. § 6–801 requiring the abrogation of the common law remedy of equitable indemnity. Hence, we find no error in the trial court's instructions regarding Agri–Lines' right to indemnity, nor by the failure of the trial court to instruct the jury in the express language of contribution.

 In the instant action, Agri–Lines' attempt to obtain reimbursement is also sufficient under the facts to allow recovery under the theory of subrogation. Subrogation is an equitable principle based on the general theory that one compelled to pay for damages caused by another should be able to seek recovery from that party. *May Trucking v. International Harvester Co.*, 97 Idaho 319, 543 P.2d 1159 (1975);

*Williams v. Johnston, supra.* As stated by the Court in *Houghtelin v. Diehl*, 47 Idaho 636, 639–640, 277 P. 699, 700 (1929):

> Subrogation, in its broadest sense, is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities. The doctrine is derived from the civil law from which it has been adopted by courts of equity. It is considered a creature of equity, and is so administered as to secure real and essential justice without regard to form, and it will not be allowed where it would work an injustice to others, as where it would disturb the priorities of liens or defeat any rights of others. Its principle is often extended to those who, because of their interest in the property on which debts of others are a charge, are entitled to pay such debts and be substituted to the place of the original creditor. Generally speaking, it is only in cases where one advances money to pay the debt of another to protect his own rights that a court of equity substitutes him in place of the creditor as a matter of course, without any express agreement to that effect. The doctrine of subrogation is not administered as a legal right, but the principle is applied to subserve the ends of justice and to do equity. It does not rest on contract, and no general rule can be laid down which will afford a test in all cases for its application, and whether the doctrine is applicable to any particular case depends upon the peculiar facts and circumstances of such case.

As stated in *Williams, supra* at 298, 442 P.2d at 184: "For the right of subrogation to arise, it is first essential that the party making a payment to a third person is under an obligation to make such a payment or has a recognizable interest to protect." As demonstrated by the record here, Agri–Lines had an interest to protect, *i.e.*, it was a defendant in lawsuits brought by Chenery and the Spencers for alleged breach of express and implied warranties, negligence, fraud, and reckless conduct in servicing the pump. Therefore, the deci-

sion to offer judgment cannot be construed as a voluntary payment.

As stated in 83 C.J.S. § 16 Subrogation, at 617–18:

> A person voluntarily satisfying the debt or default of another can claim no right of subrogation, but it is apparently sufficient if there is practical compulsion to pay, although there may be no strict legal obligation to do so, or if, because of mistake, the payor believes that it is his legal duty to pay. Where the injured person does not have a cause of action against the wrongdoer, the person making compensation for the injury has nothing to which to be subrogated.

We hold that Agri–Lines was under sufficient compulsion to make the payments and it is entitled to be subrogated to the amount of payments made to Chenery and the Spencers. Under subrogation, Agri–Lines succeeded to the rights of Chenery and the Spencers by the settlement for the crop losses, and hence Agri–Lines was subrogated against the tortfeasor responsible for the harm, *i.e.*, Layne. As the subrogee, Agri–Lines occupies the same positions as would Chenery and the Spencers, and has the same but no greater rights. Agri–Lines was substituted and subrogated to any cause of action which Chenery and the Spencers would be entitled to bring against Layne, and thus Agri–Lines' causes of action include strict liability in tort, breach of implied warranty, and negligence. *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Employers M.L.I. Co. of Wisconsin v. Robert E. Mc..'ee G.C. Inc.*, 16 Ariz.App. 77, 491 P.2d 27 (1971); *Employers Casualty Co. v. Wainwright*, 28 Colo.App. 292, 473 P.2d 181 (1970); 73 Am.Jur.2d Subrogation § 106. Since the trial court had a duty to instruct the jury on every reasonable theory recognized by law that is supported by the evidence presented at trial, *Everton v. Blair*, 99 Idaho 14, 576 P.2d 585 (1978); *Hodge v. Borden*, 91 Idaho 125, 417 P.2d 75 (1966); *Domingo v. Phillips*, 87 Idaho 55, 390 P.2d 297 (1964), the trial court did not err in its instructions to the jury on the theories of strict liability and implied warranty.

We have considered Layne's other assertions of error regarding instructions, and find them to be without merit.

## II.

As to evidentiary matters, Layne first asserts that the trial court erred in admitting Exhibit 25. We disagree. Exhibit 25 was a chart prepared by Layne, and although Agri–Lines was not aware of the chart's existence at the time of the events in question, the chart was used at trial to imply that the lifting ears could be used to lift the pump. As such the exhibit was relevant and properly admitted. I.R.E. 402. Layne also asserts that the entire price book from which the chart was taken should have been admitted in evidence, however, Layne failed to make either an objection or a request for such under I.R.E. 106 at trial, and therefore such issue is not properly before this Court. Layne next asserts that the removal of the final page from Exhibit X, the installation and operation instruction manual, was erroneous. That page contained a limited warranty which the court in its discretion removed, believing it could confuse or mislead the jury. The trial court has discretion to refuse to admit evidence where its probative value, if any, is substantially outweighed by the danger of prejudice. I.R.E. 403. In sum, we find no error in the court's rulings upon evidentiary matters.

## III.

Layne next asserts that the trial court erred in refusing to grant a new trial. Layne argues that the evidence does not support the jury's verdict. We disagree. The evidence is conflicting and sufficient to support a verdict for either party, and the jury as trier of fact found in favor of Agri–Lines. The trial court possesses discretion to grant or refuse to grant a new trial, and such discretion will not be disturbed on appeal unless it clearly appears to have been applied unwisely, and to have been manifestly abused. *Sanchotena v. Tower Co.*, 74 Idaho 541, 264 P.2d 1021

(1953); *Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972). *See also Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979) and *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986). Layne does not assert that the trial court erred in failing to itself weigh the evidence, and therefore we need not consider *Dinneen v. Finch, supra,* and its progeny.

## IV.

 On its cross-appeal Agri–Lines asserts that the trial court erred in failing to award $32,612.50 in attorney fees as a prevailing party, pursuant to I.C. § 12–121. Agri–Lines argues that the court erroneously applied I.R.C.P. 54(e)(1), which requires as a predicate for the award of attorney fees that the non-prevailing party must be found to have brought, pursued or defended the case frivolously or without foundation. Agri–Lines suggests that the rule became effective on March 1, 1979, the present action was filed prior to that effective date and hence such standard should not be applied in the instant case.

As the trial court stated:

Long before I.R.C.P. 54(e)(1) was adopted, this court took the position, along with most other Idaho district judges, that prior to an I.C. § 12–121 award it was necessary to find a case had been defended unreasonably, frivolously or without foundation.... Although there are equitable considerations which suggest to this court that a discretionary award of attorney fees might be appropriate based on the jury's findings that Agri–Lines was free of fault, I cannot find grounds to conclude [that] its [Layne's] defense was frivolous, unreasonable or without foundation.

Hence, we hold that the application of the general standard by the district court in the instant case was not an abuse of discretion.

 Agri–Lines further argues that the trial court should have awarded attorney fees since Agri–Lines was the prevailing party, Layne unreasonably denied any fault, and Layne failed to negotiate in good faith. I.C. § 12–121 expressly provides that the decision to award attorney fees is discretionary. "In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees." The decision to award attorney fees pursuant to I.C. § 12–121 rests in the sound discretion of the trial court, and will not be disturbed in the absence of a showing of abuse of discretion. *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982); *Haskin v. Glass,* 102 Idaho 785, 640 P.2d 1186 (Ct.App.1982); *Palmer v. Idaho Bank & Trust,* 100 Idaho 642, 603 P.2d 597 (1979). In the instant case we find no such abuse of discretion by the trial court.

## V.

In its Memorandum of Costs filed with the Court after judgment was entered in this case, Agri–Lines also sought recovery of attorney fees in the amount of $2,053.50 pursuant to Rule 37(c) of the Idaho Rules of Civil Procedure, which provides in pertinent part:

If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

In Agri–Lines' Second Request for Admission dated December 10, 1985, Agri–Lines requested that Layne Pump admit the following fact:

Request No. 11: According to the literature printed by Layne Pump, Inc. prior to July 1, 1975, pumps with specifications of the pump involved in this action, could be pulled by use of the pump ears.
Response: Denied.

Agri–Lines did prove at trial that there was, in fact, literature printed by Layne

Pump, Inc. prior to July 1, 1975, which showed that pumps of the specifications of the subject pump could be pulled by use of the lifting ears on the pump discharge head. This literature was admitted into evidence as Exhibit 25. Layne Pump employees, Bill Webb and Jim Brock, both testified that this literature was available in July of 1975, that the chart related to the pump discharge head in question, and that it was contemplated by Layne Pump that the lifting ears on that discharge head could lift the size, type and length of column present on the subject pump.

Because of Layne Pump's denial of the request for admission, Agri–Lines had to prove the point and thereby incurred the related expenses set out in Exhibit E attached to its Memorandum of Costs. The record establishes this evidence was very important in demonstrating that the lifting ear on the subject pump was defective and breached implied warranties because the literature, set out in Exhibit 25, established that Layne Pump contemplated that lifting ears on the discharge head of the subject pump would be able to lift the weight of that size pump.

Layne Pump presented no good reason for its failure to admit the truth of the requested admission.

■ Therefore, because there is no reason to not grant Agri–Lines its costs in proving a matter that Layne Pump denied, on remand the trial court is directed to award Agri–Lines its attorney fees incurred in establishing this line of proof. See, Bradshaw v. Thompson, 454 F.2d 75, 81 (6th Cir.1972), cert. denied, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131; Wright & Miller, Federal Practice and Procedure, § 2290.

## VI.

Agri–Lines claims that the trial court erred in failing to award $24,578.80 in attorney fees as an element of damages in the indemnity action for legal expenses incurred in defending the Chenery/Spencer suit.

Agri–Lines contends that since the pump manufacturer was found solely liable by the trier of fact in the third-party action, Layne should reimburse Agri–Lines for their legal fees incurred in defending against the underlying claims brought by Chenery and the Spencers which were settled for amounts which Layne agreed were reasonable.

■ Under Idaho law, the general rule is that in an indemnity action there is no right to recover attorney fees incurred for defending against the indemnitee's own fault. Borchard v. Wefco, Inc., 112 Idaho 555, 733 P.2d 776 (1987); Weston v. Globe Slicing Machine Company, 621 F.2d 344 (9th Cir.1980) (applying Idaho law).

The issue before the Court in Borchard was whether a manufacturer was obligated to indemnify a retailer for costs and attorney fees incurred by the retailer in defending itself against a buyer's products liability claim. The Court discussed three potential situations, of which situation B is analogous to this case. The Court said:

> In situation B where the manufacturer is found liable by the trier-of-fact, but the retailer is not, the manufacturer should be liable for all of the retailer's attorney fees and defense costs except as to the defense of those allegations which were directed only against the retailer. The retailer must bear its own costs in defending itself against claims which allege that it was at fault, even if the trier-of-fact absolves the retailer of liability. 41 Am.Jur.2d § 25. (emphasis added).

733 P.2d at 779.

Clearly, the Court recognized that the right to recover attorney fees and defense costs should be limited. The indemnitee is entitled to recover only those fees and costs not primarily directed toward defending against allegations of its own fault or active negligence.

■ The district court held that Agri–Lines incurred these legal expenses in defending against allegations of its own negligence, breach of warranties, fraud and

reckless conduct, and therefore was not entitled to reimbursement from Layne.

We agree and hold that the trial court properly denied an award of $24,578.51 in attorney fees as an element of damages in the indemnity action.

## VII.

Also in this cross-appeal Agri–Lines asserts that the trial court erred in denying prejudgment interest pursuant to I.C. § 28–22–104. A majority of this Court agrees. In 1980 Agri–Lines paid Chenery and the Spencers $157,000.00 for damages resulting from the 1975 pump accident. In 1986 judgment was entered in the third-party action in favor of Agri–Lines, and against Layne. Hence, Agri–Lines asserts it is entitled to prejudgment interest from 1980 to 1986.

Agri–Lines contends that pre-judgment interest is proper when the amount of the contested liability is liquidated or is capable of ascertainment by mere mathematical process in order to fully compensate the injured party for the loss of the use of their money during the pendency of the action. *Ace Realty, Inc. v. Anderson*, 106 Idaho 742, 682 P.2d 1289 (1984); *Mitchell v. Flandro*, 95 Idaho 228, 506 P.2d 455 (1972); *Farm Development Corp. v. Hernandez*, 93 Idaho 918, 478 P.2d 298 (1970). Agri–Lines argues that the liability in this instance was ascertainable since the damages were established by its settlement prior to trial with Chenery and the Spencers, and that the only issue in the subsequent third-party action was whether Layne would be responsible for all, none, or a portion of the monies paid by Agri–Lines. *Leliefeld v. Panorama Contractors, Inc.*, 111 Idaho 897, 728 P.2d 1306 (1986).

We agree with the assertion that here the amount of the contested liability is liquidated, and hence an award of prejudgment interest is appropriate to compensate Agri–Lines for the loss of their money from 1980 to 1986. In the area of prejudgment interest, equitable principles are emphasized. *Farm Development Corp., supra; U.S. Fidelity & Guaranty Co. v. Clover Creek Cattle Co.*, 92 Idaho 889, 452 P.2d 993 (1969); *Guyman v. Anderson*, 75 Idaho 294, 271 P.2d 1020 (1954); *Bergkamp v. Carrico*, 108 Idaho 476, 700 P.2d 98 (Ct.App.1985). As above noted, Agri–Lines was required to defend against the Chenery/Spencer action, and paid for the damages that were ultimately determined to be the fault of Layne. Under such circumstances, it is inequitable to deny Agri–Lines for the use of its money during the period of six years. Hence, that part of the judgment in the district court denying prejudgment interest to Agri–Lines is reversed and remanded with directions that the trial court amend the judgment to award Agri–Lines prejudgment interest.

In all other respects the judgment and orders of the district court are affirmed. Costs to respondent cross-appellant Agri–Lines. No attorney fees on appeal allowed.

BISTLINE, HUNTLEY and JOHNSON, JJ., concur.

SHEPARD, C.J., dissents as to Part V.

BAKES, J., dissents.

BAKES, Justice, dissenting:

On numerous prior occasions this Court has pronounced the law regarding indemnification, yet today that precedent is not followed. Just last year, in *Borchard v. Wefco, Inc.*, 112 Idaho 555, 558, 733 P.2d 776, 779 (1987), we unanimously stated that "a retailer [indemnitee] must be *free of liability* in order to receive indemnity either under a general indemnity agreement or under implied indemnity." (Emphasis added.) Again, in *May Trucking Co. v. International Harvester Co.*, 97 Idaho 319, 321, 543 P.2d 1159, 1161 (1975), we stated:

"The common law right of indemnity, on the other hand, refers to those situations where a person *who without fault on his part* is compelled to pay damages occasioned by the negligence of another." (Emphasis added.)

Finally, in *Industrial Indemnity Co. v. Columbia Basin Steel & Iron, Inc.*, 93

Idaho 719, 723, 471 P.2d 574, 578 (1970), we stated:

> "It is well established that under the common law, a person *who without fault on his part* is compelled to pay damages occasioned by the negligence of another is entitled to indemnity." (Emphasis added.)

Even though the majority acknowledges that "Agri–Lines ... relies on common law principles of indemnity," *ante* at 4, the majority fails to acknowledge that the *Borchard, May Trucking* and *Industrial Indemnity* cases require that the negligence of the indemnitee be submitted to the jury to determine whether the indemnitee is "without fault on his part." *May Trucking, supra* at 321; *Industrial Indemnity, supra* at 723. Layne requested three negligence instructions that would have allowed the jury to decide whether Agri–Lines was "free of liability" or "without fault on [its] part." Layne's three requested negligence instructions were as follows:

### "THIRD–PARTY DEFENDANTS' REQUESTED INSTRUCTION NO. 21

"It was the duty of the Third–Party Plaintiff and of the Third–Party Defendant, before and at the time of the occurrence, to use ordinary care for the safety of themselves and for the safety of each other and of each other's property."

### "THIRD–PARTY DEFENDANTS' REQUESTED INSTRUCTION NO. 22

"You are instructed that contributory negligence is the failure by the Third–Party Plaintiff to use reasonable care for its own safety, which failure proximately contributes to cause the damages of which it complains."

### "THIRD–PARTY DEFENDANTS' REQUESTED INSTRUCTION NO. 23

"You are instructed that when it is said in these instructions that the Third–Party Plaintiff was required to use reasonable care to avoid damage to another's property, it is meant that Third–Party Plaintiff was required to use that degree of care which an ordinarily careful person would have used under the same or similar circumstances."

However, the trial court refused to give the jury these instructions. This constitutes reversible error. As this Court unanimously stated just one year ago in *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.*, 112 Idaho 722, 730–31, 735 P.2d 1033, 1041–42 (1987):

> "*Litigants have a right to have the jury instructed on every reasonable theory presenting a basis of a claim or relief, or defense thereto*, where such theory finds support in the pleadings and evidence. [Citations omitted.] Failure to instruct upon a party's theory of the case constitutes reversible error." (Emphasis added.)

Layne had a right to have the jury instructed on every reasonable theory presenting a defense to Agri–Lines' claims. Under our prior cases, the negligence of Agri–Lines is one such theory and, since Layne's instructions regarding that theory were rejected by the trial court, "[f]ailure to instruct upon [Layne's] theory of the case constitutes reversible error." *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc., supra* at 730–731, 735 P.2d 1033.

Under *Garrett Freightlines*, in order to have the jury instructed regarding its theory, a litigant's theory must "find[] support in the pleadings and evidence." *Id.* Layne's theory regarding Agri–Lines' negligence finds support in both. In its answer to Agri–Lines' third party complaint, Layne pleaded as follows:

### "THIRD DEFENSE

"The Third–Party Plaintiff was guilty of negligent and careless misconduct at the time of and in connection with the matters and damages alleged in the Third–Party Complaint and the Complaints of the Plaintiffs William P. Chenery, David C. Spencer and Lois N. Spencer, which misconduct proximately caused and contributed to said events and resultant damages, if any."

Again, in its motion for a new trial, Layne argued as follows:

"Uncontroverted and controverted evidence at trial clearly established that Agri–Lines was negligent by failing to use due care in lifting the pump owned by Mr. Chenery and Mr. Spencer. Evidence established that Agri–Lines did not ascertain the purpose of the lift plate placed beneath the pump head and that, because Agri–Lines lacked information, the lift crew was unable to achieve a smooth lift. Accordingly, Agri–Lines breached a duty owed to Mr. Chenery and Mr. Spencer.....

".... Additionally, it was an error of law to not instruct on Layne Pump's primary defense, i.e., that Agri–Lines breached a duty of care owed to Mr. Spencer and Mr. Chenery."

Thus, Layne's theory regarding Agri–Lines' negligence was clearly stated in the pleadings.

The evidence presented, too, strongly supported Layne's theory. First, plaintiff David Spencer testified that he knew that the lift plates in question were installed for the purpose of pulling the pumps, and that they had been used for that purpose on previous occasions. He testified as follows:

"Q BY MR. McCURDY: Mr. Spencer, the question was if on July 29 or July 30, 1975, someone had asked you what this piece of steel under the discharge head is for, what would you have told them? A I would have told them that was the lifting plate to pull the pump well."

Plaintiff David Spencer also testified specifically concerning his reaction to the lifting method used by Agri–Lines as follows:

"Q Okay. Sometime after the pump was dropped, did you learn about the way Agri–Lines was lifting the pump"
"A Yes, I did.
"Q What did you learn?
"A That they had used the ears instead of the lifting plate.
"Q What was your reaction to that?
"A Why did they do it?
"Q Why did you have that reaction?
. . . .

"THE WITNESS: Because they had always used the lifting plate, that's what we bought them for.
"Q BY MR. McCURDY: Prior to July of '75, had you seen the lifting plate used to lift the well?
"A Yes.
"Q Pardon me?
"A Yes.
"Q To your knowledge, was there any other reason for that plate to be under the discharge head on your well?
"A No.
"Q If someone had asked you what that plate was for what would you have said?
. . . .
"A To pull the pump.
"Q In what way?
"A To hook up four cable slings onto the lifting plate and lift the pump."

Ron Hiddleston, president of the entity that originally drilled the well in question and ultimately retrieved the column after the incident resulting in this litigation, testified as follows:

"Q Now, in the course of that type of work, the lifting that you did occasionally, did you ever have occasion to be involved in lifts of pumps that had lift plates under them?
"A Yes.
"Q Can you tell me where that would have been?
"A Right underneath the pump base.
. . . .
"Q I asked you on the lift that you had accomplished, what your practice was on whether to use or not use the available lift plate.
"A Well, there was no question whether we'd use it or not; if it was there that's what you tied onto, was onto the lift plate.
"Q Why is that?
"A Evidently when they installed the pump they figured the weight was great enough that they needed a lift plate.
"Q What advantage could the lift plate give you over what else might be available to latch onto?

"A Well, a lift plate is a very thick piece of steel and very strong and that's what they're used for.

. . . .

"Q BY MR. McCURDY: What I need to know, Ron, or what I'm asking, is whether you have an opinion as to what the custom in your business is in this area as to whether available lift plates are used to lift the pump.

"A Yes.

"Q And what is your opinion?

"A My opinion is that if it's there you use it. Is that what you're asking?

"Q I'm asking what your opinion is about the custom in your business in this area, not just what you do but. the custom in your business.

"A The custom in this area, that is if you have a deep pump, a deep-setting, or maybe it doesn't have to be that deep if we're talking 12-, 14-inch column, you use a lift plate when you install it, and when you go to pull it you use it, or to put it back.

"Q And why is that?

"A Because of the weight and the ears that are on these pump bases aren't designed to pick those pumps up."

In addition to the testimonies of David Spencer and Ron Hiddleston, the testimony of two other witnesses supports Layne's claim that Agri–Lines was negligent. Jimmy Brock, a witness for Layne employed in the irrigation drilling business for 35 years, testified that the industry custom calls for the use of lift plates when they are available. Further, Robert A. Spencer, an employee of Agri–Lines at the time of the incident resulting in this litigation, visited the site and became aware of the lift plate on the pump in question. He testified that he discussed the use of the lift plate with members of the work crew before the work was initiated:

"Q Can you tell me what was said?

"A Yes. At that time I told both Floyd [Stutheit, the service manager] and Mike [Ward, the rig operator] that we had a lifting plate and we would require two slings to lift the pump, and Floyd said that was no problem, they had broken the discharge head in Parma and they were familiar with the use of lifting plates. But he also informed me that they might not have two slings of identical size which might be required, but he would be able to get them from Layne in Nampa as they had borrowed identical slings from the same company before.

. . . .

"Q Backing up for a second to the conversation you related a few minutes ago between Mr. Stutheit, Mr. Ward and yourself regarding the lift plate, did either one of those people tell you that they knew what a lift plate was?

"A Yes, both."

Robert A. Spencer further testified regarding the industry standard as follows:

"Q Based upon your knowledge in the industry and your experience in the industry, would a primary guideline in repair work be if you have a deep well, as you previously defined it, and you have a lift plate in place, is the primary guideline to use that lift plate?

"A Yes. The accepted practice would be to utilize the lift plate, and if the lift plate were not present on a deep well setting, I would safety tie the shaft as well."

In addition to this testimony from Agri–Lines' own employee, there was testimony potentially demonstrating Agri–Lines' negligence in operating the rig used to lift the pump in question. Mike Ward, operator of the rig, testified that pertinent inquiries were not made before the lifting job began. Further, he testified that the throttle on the pump rig had to be set at three progressively higher settings during the first few feet of the lift, potentially indicating that a smooth lift was not being accomplished.

Thus, Layne's theory regarding Agri–Lines' negligence was strongly supported in both the pleadings and the evidence. Accordingly, under *Garrett Freightlines*, Layne had a right to have the jury instructed on this particular theory of its case. Because "[f]ailure to instruct upon a party's theory of the case constitutes reversible error," we should reverse and remand

for a new trial. *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc., supra.*